[No. 20574–9–I.   Division One.   February 6, 1989.]

WALTER BANTON, ET AL, *Appellants,* v. OPRYLAND
U.S.A., INC., ET AL, *Respondents.*

*Gerald B. Netzky,* for appellants.

*Richard Dunlap* and *Robert B. Gardner, Jr.,* for respondents.

WEBSTER, J.—Walter Banton appeals a summary judgment dismissal of his personal injury suit against two foreign corporations. We affirm, holding that the trial court correctly determined that it lacked in personam jurisdiction over the defendants.

### FACTS

Banton suffered an injury while visiting the Grand Ole Opry House in Nashville, Tennessee, on September 4, 1982.

Prior to his trip to Nashville, Banton attended a presentation in Washington promoting Opryland USA, Inc., an entertainment and lodging facility in Nashville. A representative of Opryland conducted the presentation for a National Guard enlisted association of which Banton is a member. The promotion offered a reduced rate to the group of National Guard members.

Banton and his wife decided to visit the Opryland facilities and sent a check for $200 to reserve his hotel room and musical performance tickets. According to the representative of Opry, a deposit was necessary to reserve a hotel room in the Opryland complex. Opryland sent confirmation of the reservation to Banton after receiving his $200 check in Nashville.

Banton slipped and fell his first day in Nashville while attending a musical performance in the Grand Ole Opry House. Thereafter, Banton obtained medical treatment in Washington.

Opryland broadcasts its country and western music in Washington. In addition, Opryland pays commissions to travel agents in Washington who, on occasion, book visits to

the Opryland complex. Nothing in the record indicates that a travel agent assisted Banton in booking his hotel accommodations.

Banton filed this suit on November 9, 1983, against three foreign corporations allegedly responsible for his injuries. Gaylord Broadcasting, Inc., one of the defendants, moved for summary judgment on December 10, 1986. Banton concedes that the trial court properly dismissed Gaylord. The two remaining defendants, Opryland and W.S.M. (hereinafter Opry), moved for dismissal in early 1987 challenging the Washington court's personal jurisdiction. Initially, the court denied the motion without prejudice to allow Banton an opportunity to conduct further discovery related to the jurisdiction issue. The court entered other orders in the interim compelling Opry to comply with Banton's discovery request. Opry unsuccessfully resisted certain discovery requests by Banton. When Opry renewed its motion the court dismissed the suit for lack of personal jurisdiction. Banton never filed a suit in Nashville, Tennessee, against Opry, and the Tennessee statute of limitations has subsequently expired on his claim for personal injuries.

## DISCUSSION

Two separate and distinct theories of jurisdiction warrant discussion in this case. Banton asserts jurisdiction in his complaint based on RCW 4.28.185(1)(a), the long-arm statute. This type of jurisdiction, known as specific jurisdiction, statutorily requires that the cause of action arise out of the defendant's contact with the forum. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963); *Williams v. Canadian Fishing Co.*, 8 Wn. App. 765, 767-68, 509 P.2d 64 (1973). In contrast, RCW 4.28-.080(10) establishes general jurisdiction over causes of action unrelated to the defendant's contacts. Under this jurisdictional theory foreign corporations "doing business" in Washington are subject to state court jurisdiction and the cause of action need not arise from their activities

within the state. *Crose v. Volkswagenwerk Aktiengesell-schaft,* 88 Wn.2d 50, 54, 558 P.2d 764 (1977).

SPECIFIC JURISDICTION

Analysis of long–arm jurisdiction typically involves two separate inquiries: (1) whether jurisdiction complies with the statute, and (2) whether imposition of jurisdiction violates due process. *Grange Ins. Ass'n v. State,* 110 Wn.2d 752, 756, 757 P.2d 933 (1988). Washington's long–arm statute imparts jurisdiction over a nonresident defendant

as to any cause of action arising from . . .
(a) The transaction of any business within this state;
. . .
(3) Only causes of action arising from acts enumerated herein may be asserted against [such] a defendant . . .

RCW 4.28.185(1), (3).

Banton asserts that his negligence claim against Opry for his slip and fall in Nashville constitutes a cause of action arising from Opry's transaction of business within Washington. Banton points to Opry's promotion of its services in Washington as well as the reservation of the hotel accommodations as constituting "transaction of business" within the meaning of the statute. Opry maintains that, while it may have solicited business and contracted within Washington, the cause of action does not arise from those transactions.

Specific jurisdiction is limited to suits arising out of or related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 412, 80 L. Ed. 2d 404, 104 S. Ct. 1868, 1871 (1984). Generally, when a cause of action arises from defendant's contacts with the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts. *Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir.), *cert. denied,* 439 U.S. 864 (1978); *Tillay v. Idaho Power Co.,* 425 F. Supp. 376, 379 (E.D. Wash. 1976); *Camelback Ski Corp. v. Behning,* 312 Md. 330, 539 A.2d 1107, 1111, *cert. denied,* 109 S. Ct. 130 (1988).

Washington has little case law interpreting the "arises from" language contained in our long–arm statute. None of these cases determine whether a suit for personal injuries suffered outside the forum against a foreign corporation "arises from" that corporation's promotion and consummation of business transactions within the State. However, other jurisdictions have interpreted the "arise from" language of similar long–arm statutes in cases factually analogous to the instant one. These cases provide persuasive authority that Banton's cause of action does not arise from Opry's contacts in Washington.

One case directly on point determines the same issue presented here and involves the same defendant and nearly the identical injury. The Eighth Circuit determined that a negligence claim occurring out of state did not "arise from" the promotion of Opryland within the forum state. *Pearrow v. National Life & Accident Ins. Co.*, 703 F.2d 1067, 1069 (8th Cir. 1983). In *Pearrow*, the court found that Opryland USA promoted its entertainment facilities in Arkansas. *Pearrow*, at 1069 n.3. In addition, the court found that the owner of Opryland conducted insurance business in Arkansas. *Pearrow*. Pearrow decided to visit Opryland in Nashville where she fell and broke her arm. *Pearrow*, at 1068. The court stated that Pearrow's arm injury had nothing to do with the defendant's business dealings nor with its promotions of its entertainment complex in Arkansas. *Pearrow*, at 1069. The court held that the cause of action for negligence could not be said to have arisen out of the solicitation in Arkansas. *Pearrow*. The court concluded that Arkansas had no personal jurisdiction over the negligence claim against Opryland because the claim did not "arise from" Opryland's contacts in Arkansas. *Pearrow*.

Similarly, the First Circuit held that a plaintiff's suit for personal injuries suffered while vacationing in a hotel in Hawaii did not "arise from" a reservation contract made in Massachusetts. *Marino v. Hyatt Corp.*, 793 F.2d 427, 431 (1st Cir. 1986). In *Marino*, the court held that making a hotel reservation while in the forum state is not the type of

business transaction which could support jurisdiction over an unrelated claim for negligence outside the forum. *Marino.*

Still another court has held that a defendant's promotion of its business in the forum is not the sort of contact which could support a cause of action for negligence. *Larson v. Association of Apartment Owners,* 606 F. Supp. 579, 583 (D. Minn. 1985). In *Larson* the court found that the plaintiff's suit did not allege injuries resulting from the defendant's promotional activities in Minnesota. Rather, the suit alleged negligence causing injuries to the plaintiff while the plaintiff was visiting the defendant's recreational facilities in Hawaii. The court held that in personam jurisdiction does not lie because there is no nexus between the cause of action and the activity within the state. *Larson.*

In *Krone v. AMI, Inc.,* 367 F. Supp. 1141 (E.D. Ark. 1973), the court interpreted an Arkansas long–arm statute almost identical to Washington's. *See* Ark. Stat. § 27–2502(C)(1)(a), (2). *Krone* held that the plaintiff's reservation in the forum of a hotel room located in another state had nothing to do with the injuries sustained by the plaintiff while the plaintiff was using defendant's lodging. *Krone,* at 1143. The court concluded that it had no jurisdiction over the negligence cause of action because the suit did not allege a breach of duty related to the hotel reservation. *Krone.* The *Krone* court did acknowledge that jurisdiction might lie for a breach of contract suit if the foreign defendant had breached the reservation contract consummated within the forum state. *Krone,* at 1143–44.

Many decisions in Illinois address the meaning of the term "arise from." The test developed by these court is whether the cause of action "lies in the wake of" the transaction of business within the forum. *Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 570 (7th Cir. 1986); *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 591 (7th Cir. 1984); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir. 1984); *In re Oil Spill by Amoco Cadiz,* 699 F.2d 909, 915 (7th Cir.), *cert. denied,* 464 U.S. 864 (1983).

We find that this test, however, provides little guidance and seems to beg the question as to whether the cause of action "arises from" the defendant's contacts within the forum.

The Seventh Circuit has developed a more persuasive method of analysis. In *Saylor v. Dyniewski,* 836 F.2d 341, 343 (7th Cir. 1988), the court recognized that a cause of action need not be strictly contractual to "arise from" the transaction of business in the forum. However, claims can only "arise from" transactions if some connection exists between the nature of the claim and the nature of the transaction. *Saylor.*

Applying the above test to the present case, we conclude that Banton's suit does not arise out of Opry's contacts in Washington. Opry's business transactions consist of the promotion at the National Guard meeting and the reservation agreement with Banton to stay at the facilities in Tennessee. However, Banton's suit does not allege a breach of duty related to Opry's promotional activities nor a breach of the reservation contract. The nature of Banton's cause of action is negligence occurring in Nashville. Banton alleges that Opry breached a duty in Tennessee. There is no connection between this claim and Opry's business transactions in Washington. Banton does not allege that Opry is liable for its transactions in Washington; he asserts liability based on its negligence in Tennessee. Therefore, we hold that the nature of this cause of action bears no connection to the nature of Opry's contacts in Washington. Jurisdiction under the long–arm statute is improper.

### GENERAL JURISDICTION

Having concluded that Banton's cause of action does not "arise from" Opry's contacts within Washington, we next determine whether general jurisdiction can be maintained. While Banton does not allege this theory of jurisdiction in his complaint, he does so in his brief on appeal. Opry does not assert that Banton has failed to preserve this issue for appeal.

A Washington court may properly exercise general jurisdiction over a foreign corporation if the defendant transacts business in Washington that is continuous and not merely casual or occasional and that is of such character as to give rise to legal obligations. *Crose v. Volkswagenwerk Achtiengesellschaft,* 88 Wn.2d at 54. The defendant in *Crose,* an automobile manufacturer, exerted extensive control over its distributor, owned all of the stock of its importer, and conducted a well organized, fully integrated worldwide chain of distribution. *Crose,* at 54–55. The court found that these contacts supported jurisdiction over claims that did not arise from such contacts. *Crose.*

■ Cases construing the "doing business" theory of jurisdiction generally require extensive involvement by the corporation within Washington. *Osborne v. Spokane,* 48 Wn. App. 296, 298–99, 738 P.2d 1072 (1987) establishes five factors to be considered when determining whether a foreign corporation's activities constitute "doing business" within the jurisdictional sense.

> (1) The interest of the state in providing a forum for its residents; (2) the ease with which the one asserting jurisdiction could gain access to another forum; (3) the amount, kind, and continuity of activities carried on by the foreign corporation in the state of Washington; (4) the significance of the economic benefits accruing to the foreign corporation as a result of activities purposely conducted in the state of Washington; and (5) the foreseeability of injury resulting from the use of the foreign corporation's product.

Applying these five factors here:

1. Washington has an important interest in providing a forum for its citizens who are injured by a foreign corporation's negligent acts. Banton as a citizen of Washington certainly deserves the benefit of Washington's courts. However, we find that the interest in providing a forum is diminished here because the alleged wrongful act of the defendant affected the Washington citizen while vacationing in another jurisdiction. The State's interest in providing a forum is less compelling in a suit such as this because the

defendant committed the alleged tortious acts in another state, the injuries suffered by the Washington citizen occurred outside the state's borders, and both events are unrelated to the defendant's contacts within the State.

2. Banton could have pursued his suit in Tennessee. There is no allegation that the same or similar remedies are unavailable in a Tennessee court. We are mindful, however, that litigation in Tennessee would be burdensome. But, we note that all travelers bear some risk that an injury might occur while away from home. Obtaining compensation for those injuries, most often, will be inconvenient. This case is no exception.

Banton argues that Tennessee is an unavailable forum because the statute of limitations has expired. This argument lacks merit. A party who allows a statute of limitations to run should not be rewarded by receiving special treatment in determining jurisdiction. Banton's counsel allowed a substantial amount of time to elapse without action on this case. Counsel's lack of activity on this case was such that the Superior Court Clerk on its own motion sought dismissal for want of prosecution. As this time elapsed, so did the statute of limitations in Tennessee. Thus, the fact that the statute of limitations has elapsed is not a factor which could weigh in Banton's favor.

3. Opry's activities in Washington consist of the following: an Opry representative's presentation given to a National Guard meeting soliciting persons to visit the Opryland complex; payment of commissions to travel brokers in Washington who, on occasion, sell vacation packages to the Opryland complex; occasional broadcasts of musical entertainment taped at the Grand Old Opry House; a check sent by Banton to Opry and a confirmation returned acknowledging receipt and reservation of seats and lodging in Nashville. We do not characterize these contacts as systematic or continuous. With the possible exception of the occasional broadcasts none of Opry's dealings affect more than a few Washingtonians. The record does not establish that Opry regularly conducts any of the above activities.

We conclude that the contacts are few, isolated, and do not suggest continuous involvement by Opry in Washington.

4. Opry obtained some revenue from Washingtonians visiting Nashville—at least from Banton and his wife. However, Banton does not present evidence as to the extent of these economic benefits. Thus, we must conclude that they are not so substantial so as to weigh in favor of imposition of in personam jurisdiction.

5. Opry's entertainment and lodging services are arguably not a product, and thus, this factor does not apply. *See Osborne,* at 298–99. But, even assuming that the Opryland premises could be deemed a product, this factor does not justify imposition of jurisdiction in this case. Foreseeability of injury in the Opryland complex has not been emphasized by Banton to be an important factor here. Moreover, there can hardly be said to be a high degree of foreseeability that soliciting persons in Washington would result in a slip and fall injury in Nashville. The foreseeability of injury consideration here only points to Tennessee as the most appropriate forum.

Because the extent of Opry's business dealings in Washington does not constitute "doing business" under RCW 4.28.080(10) and because long–arm jurisdiction is improper, Washington lacks in personam jurisdiction over Banton's claims.

### CONSENT TO JURISDICTION

Banton argues that Opry sought affirmative relief in Washington by filing a motion to quash a deposition scheduled of one of its employees. Banton maintains alternatively that Opry has therefore consented to jurisdiction or waived its right to challenge jurisdiction.

Banton cites no authority which states that Opry's conduct constitutes consent to jurisdiction. We find that Opry took all necessary steps to protect its challenge to Washington jurisdiction. Opry asserted lack of jurisdiction in its answer. It resisted Banton's attempts at discovery ensuring that its voluntary compliance would not be

deemed consent to jurisdiction. In so doing, Opry sought to quash a deposition scheduled of one of its employees based on its assertion of lack of jurisdiction. Finally, Opry moved for summary judgment dismissal of the suit based on lack of jurisdiction.

Thus, we hold that Opry did not consent to jurisdiction when it appeared for the purpose of challenging jurisdiction. Having found no jurisdiction, the summary judgment of the trial court stands.

We affirm.

WINSOR, J., and WILLIAMS, J. Pro Tem., concur.