[No. 24915-1-I. Division One. January 22, 1991.]

NORMAN HEIN, *Appellant,* v. TACO BELL, INC., *Respondent.*

*Michael R. Caryl,* for appellant.

*Chris Howard* and *John Christiansen,* for respondent.

PEKELIS, J.—Dr. Norman Hein appeals the dismissal of his personal injury suit against Taco Bell, Inc., for lack of personal jurisdiction. He contends (1) that the State of Washington has general jurisdiction over Taco Bell pursuant to RCW 4.28.080(10) and (2) that the 1–year California statute of limitations should not be applied to bar his claim pursuant to RCW 4.18.040.

## I

Hein is a lifelong resident of Washington State with a graduate degree in dentistry. Taco Bell is a California corporation which operates fast food restaurants in various states and has been qualified to transact business as a foreign corporation in Washington since 1966.

On April 6, 1987, Hein purchased a taco salad at a Taco Bell restaurant in Anaheim, California. After returning to a nearby hotel room, Hein bit into the taco salad and cracked several teeth. He emptied the contents of his mouth and found among the partially chewed greens a three–quarter-inch aluminum staple.

Hein returned to the restaurant and showed the staple to the manager. While recounting what had happened, Hein noticed a large plastic bag of vegetable greens behind the manager, fastened with what he identified as the same type of aluminum staple as that found in his taco salad. The manager gave Hein a Santa Ana, California address and phone number where he could obtain further information about filing a claim.

Shortly after returning to Seattle, Hein wrote to Taco Bell at the address given to him by the manager of the Anaheim restaurant. Four to six weeks later, he received a telephone call from Kevin Shranne, who identified himself as an employee of Taco Bell. Shranne gave Hein another address in Garden Grove, California. Shranne also promised to get back to Hein within a week, reportedly telling him that "he wanted to see what he could do for [Hein]." Hein waited approximately 4 to 6 weeks but Shranne never called back. In July 1987, he wrote another letter to Taco Bell, this time mailing it to the Garden Grove address provided by Shranne. He received no response to this letter.

By March 1988, Hein concluded that Taco Bell was not going to entertain his claim and retained counsel in Washington. On December 13, 1988, he filed a complaint for damages against Taco Bell in King County Superior Court. A copy of the complaint was served on Taco Bell's registered agent, the CT Corporation, in Seattle.

On February 24, 1989, Taco Bell filed a motion to dismiss Hein's lawsuit pursuant to CR 12(b)(2), (3) and (6). Taco Bell argued that the trial court lacked personal jurisdiction over it, that the applicable California statute of limitations, Cal. Civ. Proc. Code § 340(3), had elapsed, and that King County was an inconvenient forum.

On March 24, 1989, the trial court granted dismissal, concluding that it could not exercise personal jurisdiction over Taco Bell. The court did not reach Taco Bell's remaining grounds for dismissal. Reconsideration was denied on September 12, 1989.

## II

Hein contends that the trial court had general jurisdiction over Taco Bell pursuant to RCW 4.28.080(10). He argues that Taco Bell is "doing business" in Washington because it conducts continuous and substantial corporate activities in this state.

The plaintiff has the burden of establishing that the trial court has personal jurisdiction. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 379 (9th Cir. 1988). Whether the trial court may properly exercise personal jurisdiction is a question of law reviewable de novo when the underlying facts are undisputed. *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir. 1990) (citing *Shute,* 897 F.2d at 380).

Courts may assert either specific or general jurisdiction over nonresident business defendants. *Shute,* 897 F.2d at 380. A court may assert specific jurisdiction for a cause of action arising out of or relating to the defendant's activities within the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984); *Shute v. Carnival Cruise Lines,* 113 Wn.2d 763, 783 P.2d 78 (1989) (applying RCW 4.28.185, the long–arm statute). General jurisdiction, in contrast, enables a court to hear cases unrelated to the defendant's activities within the forum. *Helicopteros,* 466 U.S. at 414 n.9.

Here, our analysis for determining whether the trial court had general jurisdiction over Taco Bell begins with RCW 4.28.080(10), the "doing business" statute. It provides, in part:

> The summons shall be served by delivering a copy thereof, as follows:
>
> . . . .
>
> (10) If the suit be against a foreign corporation or nonresident joint stock company, partnership or association doing business within this state, to any agent, cashier or secretary thereof.

Although this section addresses service of process, it has been held to confer general jurisdiction over a nonresident defendant who transacts business in Washington that

is substantial and continuous and of such a character as to give rise to a legal obligation. *Crose v. Volkswagenwerk Aktiengesellschaft,* 88 Wn.2d 50, 54, 558 P.2d 764 (1977).

In *Crose,* the court held that a nonresident automobile manufacturer which competed in and derived income from the market in Washington through a well–organized, fully integrated distribution chain was "doing business" in Washington. *Crose,* 88 Wn.2d at 55. In response to the defendant's argument that the assertion of jurisdiction violated due process, the court went on to observe that the following factors should be considered in determining whether due process was satisfied: (1) the interest of the State in providing a forum for its residents; (2) the ease with which the plaintiff could gain access to another forum; (3) the amount, kind, and continuity of activities carried on by the foreign corporation in the state of Washington; (4) the significance of the economic benefits accruing to the foreign corporation as a result of activities purposely conducted in the state of Washington; and (5) the foreseeability of injury resulting from the use of the foreign corporation's product. *Crose,* 88 Wn.2d at 57.[1]

Hein urges this court to disregard the five factors listed in *Crose.* In doing so, he adopts the views of two Washington commentators, Lewis Orland and Karl Tegland, who assert that only factor (3), the amount, kind, and continuity of activities carried on by the nonresident defendant, is relevant to a general jurisdiction analysis. The remaining factors, they argue, address due process concerns unique to specific jurisdiction, in which the action must be related to or arise out of the nonresident defendant's activities in the

---

[1]Since *Crose,* two other Washington cases have addressed the question whether a foreign corporation is subject to in–state service of process for a cause of action arising from activities occurring outside of this state. In *Osborne v. Spokane,* 48 Wn. App. 296, 738 P.2d 1072 (1987), the court relied on the five factors listed in *Crose* to hold that a Canadian corporation was not subject to general jurisdiction under RCW 4.28.080(10). Similarly, in *Banton v. Opryland, U.S.A., Inc.,* 53 Wn. App. 409, 767 P.2d 584 (1989), this court applied the *Crose* factors and held that the defendant, a Tennessee corporation, was not "doing business" in Washington.

forum. 14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice—Civil* § 13, at 4–5 (Supp. 1990). Presumably, this is because, as the United States Supreme Court has long recognized, the assertion of jurisdiction over a nonresident corporation that is "doing business" in the forum state necessarily comports with due process.[2]

Hein's argument is compelling and not inconsistent with *Crose*. The *Crose* court resolved the issue of personal jurisdiction by employing a "doing business" analysis. *Crose,* 88 Wn.2d at 54–55. This is essentially the same inquiry that due process requires under factor (3), the amount, kind, and continuity of activities carried on by the foreign corporation in Washington. *Crose,* at 56. While the *Crose* court conducted an extensive "doing business" analysis in deciding whether the trial court correctly asserted jurisdiction, it only summarily recited the five factors in deciding whether the assertion of general jurisdiction violated due process. We thus conclude that the essential inquiry in an analysis of general jurisdiction is whether the nonresident business defendant is doing business in Washington—that is, whether, under factor (3), its business activities in Washington are substantial and continuous and of such a character as to give rise to a legal obligation.

Here, Taco Bell's activities in Washington are continuous and substantial. Taco Bell has been registered as a foreign corporation in Washington for 24 years. The record shows that Taco Bell has at least 16 restaurants in the Seattle area alone. From this fact, it can reasonably be inferred that Taco Bell (1) operates other restaurants throughout

---

[2]*See, e.g., Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 438, 96 L. Ed. 485, 72 S. Ct. 413 (1952) (Ohio court's assertion of jurisdiction over foreign corporation did not offend due process when the corporation, through its president, had been carrying on a continuous and systematic, but limited, part of its general business in Ohio); compare *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 416 (Texas court lacked general jurisdiction over nonresident corporation whose commercial contacts with the forum did not constitute the kind of continuous and systematic contacts found to exist in *Perkins*).

Washington, (2) hires hundreds of Washington employees to operate these restaurants, and (3) purchases supplies and services from other businesses in this state. Finally, Taco Bell benefits from such governmental services as police and fire protection.

Although these activities alone support the assertion of general jurisdiction over Taco Bell, application of the remaining *Crose* factors produces the same result. Applying factor (1), Washington has an equally strong interest in providing a forum for Hein, as it did for Ms. Crose, who was also injured in California. *Crose,* 88 Wn.2d at 52. Next, Orland and Tegland argue that factor (2), the ease of gaining access to another forum, confuses general jurisdiction with forum non conveniens doctrine. *See* L. Orland & K. Tegland, at 4 (Supp. 1990). Even so, here, there is no reason why Hein could not have timely pursued his claim in a California court.

Applying factor (4), the operation of 16 restaurants in the Seattle area alone creates a reasonable inference that Taco Bell enjoys significant enough "economic benefits" from its sales in Washington to justify jurisdiction here. Finally, factor (5), the "foreseeability of injury", appears to have been replaced in favor of an analysis of the "foreseeability that the defendant will be haled into the forum state." L. Orland & K. Tegland, at 5 (Supp. 1990) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)). Thus, to the extent that foreseeability remains a valid factor, Taco Bell's extensive business activities in Washington make apparent the possibility that it will be haled into a Washington court for a cause of action unrelated to those activities.

In summary, the balance of the five factors, especially factor (3), weighs decidedly in favor of general jurisdiction over Taco Bell in Washington. Thus, we hold that the trial court erred in determining that general jurisdiction could not properly be exercised pursuant to RCW 4.28.080(10).

### III

Our determination that personal jurisdiction exists is a pyrrhic victory for Hein, however. We believe that dismissal is appropriate in this case on the alternate ground that the relevant California statute of limitations, Cal. Civ. Proc. Code § 340(3) (Deering 1990),[3] has expired.

 A reviewing court can uphold the trial court's judgment upon any theory established by the pleadings and supported by the proof even if the trial court did not consider that theory. *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984). This principle is premised on the proposition that the parties had a full opportunity to develop facts relevant to the decision. *Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 414, 553 P.2d 107 (1976).

Washington is one of only five states which has adopted the Uniform Conflict of Laws—Limitations Act. The general rules embodied in the act are found in RCW 4.18.020, .030, and .040. These sections provide, in part:

> (1) Except as provided by RCW 4.18.040, if a claim is substantively based:
> (a) Upon the law of one other state, the limitation period of that state applies; . . .

RCW 4.18.020.

> If the statute of limitations of another state applies to the assertion of a claim in this state, the other state's relevant statutes and other rules of law governing tolling and accrual apply in computing the limitation period . . ..

RCW 4.18.030.

> If the court determines that the limitation period of another state applicable under RCW 4.18.020 and 4.18.030 is *substantially different* from the limitation period of this state and has

---

[3]This section provides:
"Within one year:
" . . . .
"3. An action for . . . injury to or for the death of one caused by the wrongful act or neglect of another . . .."

not afforded a *fair opportunity* to sue upon, . . . the limitation period of this state applies.

(Italics ours.) RCW 4.18.040.

Here, Hein concedes that the substantive law of California applies to his claim. Thus, under RCW 4.18.020(1)(a), California's 1–year limit sets the period in which his suit could have been timely commenced. In Washington, the applicable limitation period is 3 years. RCW 4.16.080. The parties agree that this 2–year difference in time is "substantial" under the meaning of RCW 4.18.040. Thus, we must determine next whether the California limitations period afforded Hein a "fair opportunity" to sue.

Hein argues that California's 1–year limitation period is unreasonable when applied to a Washington plaintiff. This argument is without merit. The fact that a forum state's limitation period is shorter than Washington's does not justify the application of the "escape clause" in RCW 4.18.040. Uniform Conflict of Laws–Limitations Act § 4 comment, 12 U.L.A. 59 (Supp. 1990). Absent other evidence indicating unfairness, we hold that the California limitation period provided Hein with a "fair opportunity" to sue.

Hein next contends that he should be allowed to conduct discovery into whether Taco Bell has policies or practices designed to mislead potential plaintiffs. We decline to do so. There is no evidence that Taco Bell induced Hein to delay the filing of his claim until after the statutory period lapsed in April 1988. Shranne told Hein, in July 1987, that he would get back to him in a week. When Shranne failed to do so, it was unreasonable for Hein to delay any longer. Thus, none of the acts relied on by Hein, alone or together, justify his failure to file until December 1988, 8 months after the statute of limitations had run.

In summary, we hold that Taco Bell's business activities in Washington rise to a level necessary to support general jurisdiction. Nevertheless, we affirm the trial court's grant

of dismissal because the applicable California limitations period lapsed before the commencement of Hein's action.

DEIERLEIN and WINSOR, JJ. Pro Tem., concur.