[No. 13028–9–II.   Division Two.   June 13, 1991.]

PATTI HARTLEY, ET AL, *Appellants*, v. AMERICAN CONTRACT BRIDGE LEAGUE, *Respondent*.

*Steven Quick–Ruben* and *Branfeld, Holzman & Quick–Ruben, P.S.,* for appellants.

*Richard S. Lowell* and *Magnuson, Johnson & Lowell,* for respondent.

ALEXANDER, J.—Patti Hartley, Janet Robertson, Jean Mitchell and Shirley Blum appeal a summary judgment of

the Pierce County Superior Court dismissing their lawsuit against the American Contract Bridge League. They contend, principally, that the trial court erred in concluding that it lacked personal jurisdiction over the League. We reverse.

Hartley, Robertson, Mitchell and Blum are serious contract bridge players.[1] Only Hartley is a resident of this state. The American Contract Bridge League is a nonprofit New York corporation that has its headquarters in Memphis, Tennessee. The League is an international organization that sanctions and organizes bridge tournaments throughout North America. The League organizes itself geographically into districts. Pierce County is in district 19 and Dudley Brown of Grandview, Washington, is a member of the League's board of directors, representing district 19. The League collects membership dues, sells bridge paraphernalia and charges fees to its members to participate in its tournaments. It also distributes a magazine to League members in which it advertises its tournaments and sets forth the rules for such tournaments.

In March 1989, Hartley, Robertson, Mitchell and Blum played together as a team in a bridge tournament in Reno, Nevada. This was part of their effort to qualify for the Women's International Team Trials at which a team was to be selected to represent the United States in the World Bridge Federation's World Championships. They finished second in the tournament. The League disqualified the first–place team, however, and it then told Hartley, Robertson, Mitchell and Blum that because of the disqualification, they were eligible to play as a team in the International Team Trials. In April, the League's executive committee conducted a meeting via a telephone conference call and reversed its decision to disqualify the first–place team. The committee then informed Hartley and her teammates that it had changed its position and that they would

---

[1]Hartley asserts that she is a professional bridge player and that her ability to earn money from teaching is dependent upon her competitive standing.

not be eligible to play in the International Team Trials. Hartley, Robertson, Mitchell and Blum appealed that decision to an appellate committee of the League but to no avail.

Hartley and her teammates then filed a lawsuit against the League in Pierce County Superior Court seeking injunctive relief and damages. They obtained personal service of their summons and complaint on League director Brown. The League moved, pursuant to CR 12(b), to dismiss the complaint, contending that process was not served on a proper party and that the Pierce County Superior Court lacked personal jurisdiction over it. The motion was granted and this appeal followed.

When a challenge to a court's jurisdiction is raised by motion and the court considers matters outside the pleadings, the motion is treated as one for summary judgment as to jurisdiction. *John Does v. CompCare, Inc.*, 52 Wn. App. 688, 763 P.2d 1237 (1988), *review denied*, 112 Wn.2d 1005 (1989). When reviewing a summary judgment order, the appellate court engages in the same inquiry as the trial court. *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 743 P.2d 832 (1987), *review denied*, 109 Wn.2d 1025 (1988). Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c); *Hontz v. State*, 105 Wn.2d 302, 311, 714 P.2d 1176 (1986).

When the underlying facts are undisputed, the question of personal jurisdiction is a question of law reviewable de novo. *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991) (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380 (9th Cir. 1988), *cert. granted*, 111 S. Ct. 39 (1990)). Because the facts are essentially undisputed, we are confronted with two issues of law: First, whether service of process was made on a proper party. Second, if service of

process was proper, whether the trial court erred in concluding from the undisputed facts that the Pierce County Superior Court was without jurisdiction.

## I
## SERVICE OF PROCESS

The League argues that Board Member Dudley Brown was not a proper party to receive service of process. Pursuant to RCW 4.28.080(10), a summons shall be served on "any agent, cashier or secretary" of a foreign corporation. The League correctly observes that Brown is not a registered agent.[2] The fact that Brown did not have express authority to receive process is not fatal to plaintiffs. The more pertinent inquiry concerns the character of the person served in view of the surrounding facts and inferences which may be properly drawn from them. *Crose v. Volkswagenwerk Aktiengesellschaft*, 88 Wn.2d 50, 58, 558 P.2d 764 (1977); *Reiner v. Pittsburg Des Moines Corp.*, 101 Wn.2d 475, 478, 680 P.2d 55 (1984). Thus,

> it is not necessary that express authority to receive or accept service of process shall have been conferred by the corporation on the person served. It is sufficient if authority to receive service may be reasonably and justly implied.

*Crose*, 88 Wn.2d at 58 (quoting *State ex rel. Western Canadian Greyhound Lines v. Superior Court*, 26 Wn.2d 740, 757, 175 P.2d 640 (1946)).

In *Reiner*, the court concluded that a manager of "site support services" at Hanford's No. 2 site had sufficient discretionary authority to act in a representative capacity to accept service of process. *Reiner*, 101 Wn.2d at 478. Here, Dudley Brown, as a board member of the American Contract Bridge League, is the official representative of the League in this state. It is reasonable to infer that Brown would turn over the process to those called upon to answer. *See Crose v. Volkswagenwerk Aktiengesellschaft, supra.* Service of process was had on a proper party.

---

[2] A registered agent is a person who has been officially designated by a corporation to receive service of process pursuant to RCW 23A.32.080.

## II
### JURISDICTION

■ The League argued below, as it does here, that Washington has no jurisdiction over it. The exercise of personal jurisdiction over a nonresident defendant must be consistent with the due process requirements of the fourteenth amendment to the Constitution of the United States. *Shaffer v. Heitner,* 433 U.S. 186, 204, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945)). The amount and kind of activities which must be carried on by the foreign corporation in the forum state must be such that it is reasonable and just to subject the corporation to the jurisdiction of that state. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 96 L. Ed. 485, 72 S. Ct. 413 (1952).

RCW 4.28.080(10) permits Washington to assert general jurisdiction[3] over a foreign corporation "doing business" within this state. In Washington, the "doing business" requirement of the statute subsumes the due process requirement. *Hein v. Taco Bell,* 60 Wn. App. 325, 330, 803 P.2d 329 (1991) (citing *Crose,* 88 Wn.2d at 56). *See also MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc., supra* ("doing business" necessarily comports with due process). In order to support personal jurisdiction under RCW 4.28.080(10) the activities of a nonresident defendant must be continuous and substantial. *Crose,* 88 Wn.2d at 54; *Banton v. Opryland U.S.A., Inc.,* 53 Wn. App. 409, 416, 767 P.2d 584 (1989); *Osborne v. Spokane,* 48 Wn. App. 296, 298, 738 P.2d 1072 (1987).

In *Banton,* a Washington resident was injured when he slipped and fell while visiting the Grand Ole Opry's Opryland in Nashville, Tennessee. He had decided to visit

---

[3]General jurisdiction, in contrast to specific jurisdiction, does not require that the cause of action be related to the contacts by the foreign corporation with the forum state. *Hein v. Taco Bell, Inc.,* 60 Wn. App. 325, 328, 803 P.2d 329 (1991) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)).

Opryland after attending a promotional presentation in Washington by an Opryland representative. He filed suit in Washington. The trial court dismissed the action for lack of personal jurisdiction. On appeal, the court held that activities such as presentations to solicit persons to visit the Opryland complex, occasional payment of commissions to travel brokers, occasional broadcasts of music, and confirmation of reservations affecting a few Washingtonians was insufficient to confer jurisdiction. *Banton,* 53 Wn. App. at 417. It concluded that the contacts were few and isolated and did not suggest continuous involvement by Opryland in Washington. *Banton,* 53 Wn. App. at 418.

Similarly, in *Osborne,* the court concluded that the activities of a Canadian insurance brokerage firm were too minimal and collateral to make it fair to confer jurisdiction. *Osborne,* 48 Wn. App. at 299. The court found that the firm's accounts with Washington–based clients accounted for less than 1 percent of its western region revenues and that the fact that it was acquired by a Washington corporation after the underlying cause of action was litigated was insufficient to establish jurisdiction. *Osborne v. Spokane, supra.*

Here, the activities of the League, unlike those of the corporations in *Osborne* and *Banton,* are continuous and substantial. They include the sanctioning and organizing of bridge tournaments in Washington; selling and transporting bridge supplies to tournaments in Washington; publishing a magazine to members in which tournaments are advertised and rules and conditions for the tournaments are published; charging and collecting fees from residents of Washington for participation in tournaments; collecting dues from residents of the state of Washington; determining what residents of the state of Washington may participate in tournaments; and selling bridge–oriented merchandise to residents of Washington. In light of these activities, we conclude that the League is "doing business" within the state of Washington.

Although we are confident that the only analysis required in situations where jurisdiction is predicated on RCW 4.28-.080(10) is a determination that the corporation is "doing business" within the meaning of the due process clause, we are constrained by our reading of *Crose* and *Hein* to discuss several other factors that those cases identify as relevant to determining whether due process supports the exercise of jurisdiction.[4]

In *Crose,* the court set forth the following factors to aid in the determination of whether due process is satisfied: (1) The interest of the state in providing a forum for its residents (*McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957)); (2) the ease with which the person asserting jurisdiction could gain access to another forum (*Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 94 L. Ed. 1154, 70 S. Ct. 927 (1950)); (3) the amount, kind, and continuity of activities carried on by the foreign corporation in the state of Washington (*Perkins v. Benguet Consol. Mining Co., supra*); (4) the significance of the economic benefits accruing to the foreign corporation as a result of activities purposefully conducted in the state of Washington (*Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)); *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 435 P.2d 626 (1967); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963); and (5) the foreseeability of injury resulting from the use of the foreign corporations' product (*Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967)); *Callahan,* 72 Wn.2d at 838. Because the fifth factor, foreseeability, is significant only when the injury results from the use of a product, we find it unnecessary to discuss that factor.

---

[4]In our judgment, the five factors discussed in *Crose* and *Hein* are more germane to the analysis of due process under RCW 4.28.185(1)(a), the so-called "long–arm" statute. *See* 14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice Civil* § 13, at 4–5 (Supp. 1991); *Hein,* 60 Wn. App. at 329–30.

## A
### Amount, Kind and Continuity of Activities

We agree with the court in *Hein* that of the five factors, the number, kind, and continuity of activities carried on by the nonresident defendant is the only one relevant to an analysis of whether assertion of general jurisdiction is proper. We disagree, however, that the analysis of this factor is the same as the "doing business" analysis. A nonresident defendant "doing business" within the state is subject to the broad exercise of jurisdiction and, consequently, jurisdiction may be exercised over any cause of action, regardless of the relationship of the cause of action to the activities within the forum.

In contrast, the establishment of specific jurisdiction requires an inquiry into the amount, kind, and continuity of activities giving rise to the cause of action. Activities that are sufficient to establish jurisdiction when the cause of action arises from those activities may not be sufficient to justify jurisdiction over a cause of action that is unrelated to those activities. *See Helicopteros Nationales de Colombia, S.A. v. Hall, supra.*

We hold that the activities conducted by the League in Washington, as set forth previously, are sufficient to justify jurisdiction. Hartley argues convincingly that the League operates a comprehensive and integrated system for the sale of bridge supplies and bridge paraphernalia in Washington. The League also conducts bridge tournaments within Washington. Hartley contends that these activities are conducted on a regular basis and that it is reasonably foreseeable that the League would expect to defend lawsuits in Washington or other states where these activities take place. We agree. *Cf. Banton,* 53 Wn. App. at 416; *Osborne,* 48 Wn. App. at 299.

## B
### Interest of Washington in Providing a Forum

Washington obviously has an interest in providing a forum for its injured citizens. *See McGee,* 355 U.S. at 223.

In this case, it is not clear where the wrongful act took place. The tournament was in Nevada, but the decision not to allow Hartley and her teammates to play in the team trials was made during a conference call among members of the League's executive committee. It is clear, however, that denying Hartley and her teammates the opportunity to compete in the team trials is integrally related to the organization and operation of bridge tournaments throughout North America, including Washington. Thus, we find that because Hartley is a Washington resident, Washington's interest in providing a forum for its citizens weighs in favor of plaintiffs.

## C
### Ease of Gaining Access to Another Forum

The ease of gaining access to another forum is not a factor that favors any litigant. There is no suggestion that this suit could not be maintained in Nevada, New York, Tennessee or the home states of Robertson, Mitchell or Blum. The choice of any other state as the forum would undoubtedly inconvenience some party to the suit. It can be said, however, that Washington is at least as convenient a forum as any other state.

The League contends that because Hartley travels frequently to play in tournaments throughout the United States, she bears the risk of having to maintain a suit in another forum. *Banton,* 53 Wn. App. at 417. This argument is not persuasive. In *Banton,* the court noted that all travelers bear some risk that an injury might occur while away from home and that obtaining compensation will be inconvenient. This situation, however, is unlike that in *Banton* because the fact that Hartley was traveling outside the state is unrelated to the cause of her injury. Hartley's alleged injury occurred as a result of the decision by the League and not because the tournament occurred outside the state of Washington.

## D
### Economic Benefit

The economic benefit accruing to the League from the activities it conducts in Washington is difficult to quantify. The League contends that as a nonprofit corporation any economic benefit to it is insignificant. While it is clear that the League obtains at least some income from Washington residents in the form of fees for tournaments, sales of supplies and merchandise, and dues for membership, we cannot say that this constitutes a "significant" economic benefit.

### CONCLUSION

Not all of the above factors must be shown in order to justify a conclusion that a foreign corporation is subject to the jurisdiction of the State of Washington. Here, the most important factor, the amount, kind, and continuity of activities, clearly weighs in favor of Washington having jurisdiction. Moreover, it supports the similar but not identical conclusion that the League is "doing business" within the state. In addition, one other factor weighs in favor of jurisdiction and two are of neutral effect. Balancing these factors, we hold that the League may be sued in Washington.

Reversed.

WORSWICK, C.J., and MORGAN, J., concur.