[No. 16820-4-III.    Division Three.    September 29, 1998.]

IM EX TRADING COMPANY, *Appellant*, v. FAISAL ASSAD
RAAD, ET AL., *Respondents*.

*Jerome R. Aiken* of *Meyer, Fluegge & Tenney*, for appellant.

*John J. Carroll* and *Nancy L. Geisler* of *Velikanje, Moore & Shore, Inc., P.S.*, for respondents.

Kurtz, A.C.J. — Under RCW 4.28.080(10), Washington courts may assert general personal jurisdiction over a nonresident corporation "doing business within this state." Under some circumstances, RCW 4.16.180 tolls the applicable statute of limitations during the period a defendant is absent from the state. In 1990, Im Ex Trading Company, a Washington corporation, sold fruit to La Violetera, Ltd., a Brazilian corporation, through a broker located in Brazil. In 1995, Im Ex commenced an action against La Violetera and its president alleging that they had refused to pay the remaining $64,876 due in connection with the 1990 shipment of fruit. On appeal, Im Ex challenges the trial court's decision to grant summary judgment and dismiss the cause of action for lack of jurisdiction and failure to commence the action within the applicable statute of limitations period. Although Im Ex concedes La Violetera had no presence in Washington when the cause of action accrued, Im Ex contends the applicable statute of limitations was tolled pursuant to RCW 4.16.180 until 1994 when general personal jurisdiction could be established under RCW 4.28.080(10). Im Ex further contends the court erred in failing to grant Im Ex's motion for partial summary judgment. We affirm.

## FACTS

Im Ex Trading Company is a Washington corporation doing business in Yakima County. Im Ex is an international fruit broker. La Violetera, Ltd., is a Brazilian corporation that imports fresh fruit to Brazil. Faisal Assad Raad is the president of La Violetera, Ltd.

In the fall of 1990, Im Ex entered into several contracts for the sale of fruit to La Violetera. These contracts were made through an Im Ex agent outside of the state of Washington, as La Violetera had no presence in the state of Washington prior to 1994. The 1990 shipment of fruit was arranged in Brazil through certain produce brokers located in Brazil. La Violetera's practice was to place an order for a certain quantity and type of produce with representatives

located in Brazil. Im Ex alleges that the purchase price of the goods totaled $114,844 and that La Violetera paid only $49,968.

In September 1995, Mr. Raad traveled to Yakima, Washington, to attend a trade convention and was served with a summons and complaint on behalf of Im Ex. The original complaint named Faisal Assad Raad, d/b/a La Violetera, as the defendant. Mr. Raad appeared and asserted that La Violetera was a foreign corporation. Im Ex then amended its complaint to name La Violetera, Ltd. Mr. Raad was deposed in Yakima on March 18, 1996. At that time, Mr. Raad was served with plaintiff's amended complaint.

Im Ex contends that it waited approximately five years to commence its suit against La Violetera because La Violetera was continuously absent from the state of Washington during this period. Between 1990, when the fruit was sold to La Violetera, and 1996, Mr. Raad was in the state of Washington on two occasions, once in 1994 and once in 1995. Mr. Raad did not visit the state of Washington in 1990, 1991, 1992, or 1993. Mr. Raad has never owned property in the state of Washington. In fact, the parties agree that prior to September 1994, La Violetera had no presence in the state of Washington.

In September 1994, however, La Violetera did establish a presence in the state of Washington. At that time, La Violetera began transacting business in the state of Washington directly with fruit packing houses. Each year, La Violetera purchases produce and fruit from several Washington companies during the months of September, October, November and December. Beginning in 1994, La Violetera purchased seven to eight million dollars worth of Washington fruit each year from at least four different suppliers. Mr. Raad attended the Trade Convention in Yakima in September 1995.

In their answer, La Violetera and Mr. Raad alleged several affirmative defenses. Im Ex moved for partial summary judgment to dismiss the affirmative defenses of: statute of limitations, lack of jurisdiction over the individual,

insufficient service of process, and the doctrine of laches. La Violetera then moved for summary judgment based on the statute of limitations, lack of jurisdiction, and improper service.

The trial court granted La Violetera's motion for summary judgment and dismissed Im Ex's amended complaint. The court also denied Im Ex's motion for partial summary judgment. On appeal, Im Ex contends the court erred in granting La Violetera's motion for summary judgment and denying Im Ex's motion for partial summary judgment.

## ANALYSIS

Did the trial court err in dismissing Im Ex's action against La Violetera for lack of personal jurisdiction?

Im Ex contends the trial court erred in concluding it lacked general jurisdiction over La Violetera and Mr. Raad. While Im Ex concedes that the court lacked specific jurisdiction over these parties, Im Ex asserts that the court had general jurisdiction over La Violetera because La Violetera was doing business within the state. Im Ex contends RCW 4.28.080(10) confers general jurisdiction over nonresident defendants who transact business in the state if the business is substantial and continuous. Relying primarily upon *Hartley v. American Contract Bridge League*, 61 Wn. App. 600, 812 P.2d 109, *review denied*, 117 Wn.2d 1027 (1991), Im Ex asserts that La Violetera conducted substantial and continuous business in the state of Washington by sending representatives to the Trade Convention in Yakima in 1995 and by purchasing Washington apples and pears in 1994 and 1995. Im Ex further contends the State's assertion of jurisdiction over La Violetera and Mr. Raad does not violate the due process requirement.

■ ■ Whether the trial court may properly exercise personal jurisdiction is a question of law reviewable de novo when the underlying facts are undisputed. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380 (9th Cir. 1990). The plaintiff has the burden of establishing that the trial

court has personal jurisdiction. *Id.* at 377. When the trial court's ruling is based solely on a consideration of affidavits and discovery, only a prima facie showing of jurisdiction is required. *Pedersen Fisheries, Inc. v. Patti Indus., Inc.*, 563 F. Supp. 72, 74 (W.D. Wash. 1983). The allegations in the complaint must be taken as correct for purposes of appeal. *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991).

The exercise of personal jurisdiction over a nonresident defendant must be consistent with the due process requirement of the Fourteenth Amendment. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). The amount and kind of activities required of the nonresident corporation in the forum state must be such that it is reasonable and just to subject the corporation to the jurisdiction of that state. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 72 S. Ct. 413, 96 L. Ed. 485 (1952).

In Washington, a court may exercise personal jurisdiction over a nonresident defendant by asserting either specific or general personal jurisdiction. *Hein v. Taco Bell, Inc.*, 60 Wn. App. 325, 328, 803 P.2d 329 (1991). A Washington court may assert specific jurisdiction over a cause of action arising out of the defendant's activities within the forum. *Id.* Specific jurisdiction is asserted by means of Washington's long-arm statute, RCW 4.28.185. Im Ex concedes that the agreements at issue were formed through an agent outside the state of Washington and that no set of facts would permit Washington to assert specific jurisdiction under the long-arm statute.

To maintain this action, Im Ex must demonstrate that Washington courts have general jurisdiction over the parties. Under RCW 4.28.080(10), a trial court may assert general jurisdiction over a nonresident corporation "doing business within this state." While the inquiry to establish specific jurisdiction centers on the activities of the defendant in the forum state, the inquiry to establish general jurisdiction focuses on general business activities and enables

courts to hear cases unrelated to the defendant's activities in the forum. *Hein*, 60 Wn. App. at 328; *Washington Equip. Mfg. Co. v. Concrete Placing Co.*, 85 Wn. App. 240, 244, 931 P.2d 170 (1997). RCW 4.28.080(10) confers general jurisdiction over a nonresident defendant who transacts business in Washington that is substantial and continuous, and of such character as to give rise to a legal obligation. *Crose v. Volkswagenwerk Aktiengesellschaft*, 88 Wn.2d 50, 54, 558 P.2d 764 (1977). This general jurisdiction statute subsumes the due process requirement of the long-arm statute that addresses specific jurisdiction. *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 595-96, 849 P.2d 669 (1993).

The question here is one of timing. Im Ex concedes that the Washington courts had no basis for asserting general jurisdiction over La Violetera or Mr. Raad prior to 1994. However, Im Ex argues that because the inquiry to establish general jurisdiction enables the court to hear cases unrelated to the defendant's activities in the forum, there is no time limitation as to when this inquiry must take place. Under the Im Ex view, general jurisdiction over nonresident defendants need not be established as of the time the cause of action accrued, but instead may be established at any time afterward. Rejecting this theory of "after-acquired" jurisdiction, La Violetera asserts the inquiry as to whether the court had general jurisdiction must take place as of the time the cause of action accrued.

Im Ex relies primarily on *Hartley* to establish that general jurisdiction is appropriate here. The *Hartley* court concluded that general jurisdiction was proper where the defendant nonresident corporation sanctioned and organized bridge tournaments in Washington; sold bridge supplies to tournaments in Washington; published a magazine in which tournaments were advertised; charged fees for tournaments; collected dues from residents of Washington; determined which residents could participate in tournaments; and sold merchandise in Washington. *Hartley*, 61 Wn. App. at 606. All of these activities were being conducted

at the time the cause of action accrued. Nevertheless, Im Ex asserts that La Violetera's activities in Washington in the fall of 1994 and the fall of 1995 were similar to those conducted by the corporate defendant in *Hartley* and were more than sufficient to permit the Washington courts to assert jurisdiction over a cause of action arising from activities that occurred outside of Washington in 1990.

La Violetera relies upon *MBM Fisheries* to support its argument that La Violetera's activities in 1994-1995 were insufficient to permit the Washington courts to exercise general jurisdiction over La Violetera. In *MBM Fisheries*, a dispute arose as to the amount due under a contract for the repair of a ship. Bollinger, a nonresident corporate defendant, did vessel repair work for three Washington residents other than MBM Fisheries, but all of the work was performed at Bollinger's place of business in Louisiana. Bollinger did not solicit any of this repair work, and in each instance had been contacted by the Washington customer, and the vessel to be repaired had been delivered to the Bollinger shipyard in Louisiana. Bollinger also had received a brokerage fee and attended one trade show in Seattle. In addition, Bollinger placed advertisements in four magazines, three of which may not have been distributed in Washington. After reviewing these facts the *MBM Fisheries* court concluded that Bollinger was not "doing business" in that it was not conducting continuous or substantial business activity in the state. The court also noted that the service of process on Bollinger's vice-president while he was in Seattle was insufficient alone to confer jurisdiction. *MBM Fisheries*, 60 Wn. App. at 420-21.

The position advocated by Im Ex is without merit. None of the cases cited by Im Ex support its argument that the basis for jurisdiction over a nonresident defendant may be established after the cause of action accrues. In *Hein*, the plaintiff brought suit in Washington to recover damages after he cracked some teeth while eating a taco salad purchased at a Taco Bell in California. The *Hein* court concluded that defendant Taco Bell's activities in Washing-

ton were continuous and substantial in that Taco Bell had been registered as a foreign corporation for 24 years and operated at least 16 stores in the Seattle area alone. *Hein*, 60 Wn. App. at 330. In *Crose*, the court held that a nonresident automobile manufacturer was "doing business" in Washington where the manufacturer competed in the Washington market and derived income from sales in Washington as the result of a well-organized and fully integrated distribution chain. *Crose*, 88 Wn.2d at 55. The *Harbison* court concluded there was jurisdiction under the long-arm statute, but declined to find general jurisdiction where the contacts between the Idaho corporation and Washington residents consisted of a letter sent from Idaho and the plaintiff's tender of a deposit while in Washington. *Harbison*, 69 Wn. App. 590.

It does not matter that La Violetera might have been "doing business" in Washington in 1994-1995. Even if it is assumed that La Violetera conducted continuous and substantial business activities in Washington in 1994-1995, these activities cannot serve as the basis for the Washington courts to assert general jurisdiction over a cause of action accruing in 1990, when La Violetera had no presence in Washington.

Im Ex misapprehends the importance of the timely application of the "doing business" test. The "doing business" test is applied to make certain that due process concerns are addressed before a nonresident defendant is subjected to jurisdiction in the forum state. In other words, it is the application of the "doing business" test at the time the cause of action accrues that insures that the due process requirement has been met. In *Andrews University v. Robert Bell Industries, Ltd.*, 685 F. Supp. 1015 (W.D. Mich. 1988), the court concluded that "after the fact" contacts could not provide a basis for personal jurisdiction.

Both Division One and Division Two have concluded that the application of the "doing business" test necessarily comports with due process. In *MBM Fisheries*, Division One concluded that "assertion of jurisdiction over a non-

resident corporation that is 'doing business' in Washington necessarily comports with due process." *MBM Fisheries*, 60 Wn. App. at 420. Likewise in *Harbison*, Division One stated that RCW 4.28.080(10) "subsumes the due process requirement of a long-arm statute that addresses jurisdiction arising out of or relating to the defendant's activities in the forum." *Harbison*, 69 Wn. App. at 595-96. In *Hartley*, Division Two relying on *MBM Fisheries* and *Hein* also concludes that the "doing business" requirement subsumes the due process requirement. *Hartley*, 61 Wn. App. at 605. If the nonresident corporate defendant is not "doing business" in the state at the time the cause of action accrues, the assertion of general jurisdiction over the defendant would violate due process. The parties here agree that La Violetera was not doing business in the state of Washington at the time the cause of action accrued.

Both La Violetera and Im Ex refer to the five *Crose* factors. *Crose* first concluded that the nonresident defendant was "doing business" in Washington and then went on to examine five factors in response to the defendant's argument that the assertion of jurisdiction would violate due process. The five factors are:

> (1) the interest of the State in providing a forum for its residents; (2) the ease with which the [plaintiff] could gain access to another forum; (3) the amount, kind, and continuity of activities carried on by the foreign corporations in the state of Washington; (4) the significance of the economic benefits accruing to the foreign corporations as a result of activities purposefully conducted in the state of Washington; and (5) the foreseeability of injury resulting from the use of [the foreign corporation's] products.

*Crose*, 88 Wn.2d at 57 (citations omitted).

The *Hein* court concluded that the *Crose* court only summarily recited the five factors and that these factors address concerns unique to specific jurisdiction rather than general jurisdiction. The *Hein* court further concluded the inquiry to establish general jurisdiction is limited to whether the nonresident business defendant was "doing

business" in Washington and whether, under factor (3), those business activities were "substantial and continuous and of such a character as to give rise to a legal obligation." *Hein*, 60 Wn. App. at 329-30. In *Hartley*, Division Two stated:

> We agree with the court in *Hein* that of the five factors, the number, kind, and continuity of activities carried on by the nonresident defendant is the only one *relevant* to an analysis of whether assertion of general jurisdiction is proper. We disagree, however, that the analysis of this factor is the same as the "doing business" analysis. A nonresident defendant "doing business" within the state is subject to the broad exercise of jurisdiction and, consequently, jurisdiction may be exercised over any cause of action, regardless of the relationship of the cause of action to the activities within the forum.

*Hartley*, 61 Wn. App. at 608 (emphasis added).

Based on these cases, the Washington courts apply the "doing business" analysis to determine whether general jurisdiction is proper. While the court might look to factor (3) for guidance, the inquiry is centered on whether the nonresident was "doing business" in Washington. If it can be established that a defendant is doing business in Washington at the time the cause of action accrued, the due process requirement has been met and general jurisdiction is proper. Contrary to the assertions of La Violetera, Washington courts do not conduct a two-part analysis by first determining whether the defendant was "doing business" and then determining whether the assertion of jurisdiction would violate the due process requirement.

In short, the inquiry as to whether the court had general jurisdiction requires a showing that the nonresident defendant was "doing business" in Washington at the time the cause of action accrued. Absent this showing, the assertion of jurisdiction over the defendant by the Washington courts violates due process.

The trial court did not err in concluding that it did not have general personal jurisdiction over La Violetera and Mr. Raad.

Does RCW 4.16.180 operate to toll the applicable statute of limitations until such time as a basis for jurisdiction can be established?

Under some circumstances, RCW 4.16.180 tolls the statute of limitations during the period a defendant is absent from the state. RCW 4.16.180 reads as follows:

> If the cause of action shall accrue against any person who is a nonresident of this state, or who is a resident of this state and shall be out of the state, or concealed therein, such action may be commenced within the terms herein respectively limited after the coming, or return of such person into the state, or after the end of such concealment; and if after such cause of action shall have accrued, such person shall depart from and reside out of this state, or conceal himself, the time of his absence or concealment shall not be deemed or taken as any part of the time limit for the commencement of such action.

Assuming that the Washington courts had general jurisdiction over La Violetera based on the corporation's contacts with Washington in 1994 and 1995, Im Ex next argues that RCW 4.16.180 tolls that statute of limitations from the time that the cause of action accrued in 1990, until such time as general jurisdiction was established in 1994 or 1995. Relying upon *Summerrise v. Stephens*, 75 Wn.2d 808, 454 P.2d 224 (1969), Im Ex asserts that RCW 4.16.180 tolls the statute of limitations whenever a defendant is absent from the state such that process could not be served upon the defendant. Im Ex argues that because La Violetera was not subject to service under the long-arm statute, the statute of limitations did not begin to run until some basis for service was established. Im Ex argues that the doctrine of laches would be applicable to protect a defendant in the event a plaintiff unreasonably delays in bringing an action. Im Ex concedes that the applicable statute of limitations has expired unless the tolling provisions of RCW 4.16.180 apply.

■ This argument lacks merit. In *Summerrise*, the court found that RCW 4.16.180 did not operate to toll the ap-

plicable statute of limitations when the defendant was absent from the state but the plaintiff was aware of the defendant's place of residence out of state and could have proceeded against the defendant under the long-arm statute. RCW 4.16.180 provides that the applicable statute of limitations will be tolled for any period of absence or concealment when a person "shall depart from and reside out of the state" after a cause of action has accrued. By its terms, RCW 4.16.180 requires that a basis for jurisdiction exist before the person departs from the state. Adoption of the interpretation of this provision urged by Im Ex would violate due process rights.

The judgment of the trial court is affirmed.

SWEENEY and KATO, JJ., concur.

Review denied at 137 Wn.2d 1023 (1999).