[No. 17544-8-III.   Division Three.   April 27, 1999.]

BYRON NELSON CO., *Appellant*, v. ORCHARD MANAGEMENT CORPORATION, *Respondent*.

*Larson & Perkins P.L.L.C.*, by *James A. Perkins*, for appellant.

*Velikanje, Moore & Shore*, by *John S. Moore, Jr.*, for respondent.

SWEENEY, J. — Byron Nelson Co. (Byron) is a Washington corporation. Byron brokers sales of used commercial equipment. Orchard Management Corporation (OMC) is a Virginia corporation. It sells used farm equipment. OMC had a complete used apple packing line to sell. In 1995, in response to an old magazine advertisement of Byron's, OMC

contacted Byron in Washington and asked Byron to act as its broker for the packing line. On August 23, 1995, the parties executed a brokerage contract by facsimile. The contract gave Byron the exclusive right to sell the equipment through April 1996, at a commission of 15 percent. Byron sold some of the equipment to an Oregon buyer.

Shortly after the contract expired, Byron arranged for Jerry Fox, a Washington grower, to buy the remaining equipment. OMC orally agreed to extend the brokerage contract to cover the Fox purchase. OMC sent Byron a videotape, a complete inventory list, manuals and other written materials describing the equipment and its condition. Mr. Fox agreed to purchase the equipment depicted in the video. Byron also arranged for Mr. Fox to contact OMC directly. OMC knew the equipment was to be shipped to a Washington buyer, in Washington.

Mr. Fox refused to pay the full price until he received and inspected the equipment. OMC would not ship until full payment was received. To facilitate the sale, Byron paid OMC the full price in advance and invoiced Mr. Fox pursuant to a separate agreement. OMC shipped the equipment directly to Mr. Fox in Washington but FOB, Berryville, Virginia. The condition of the equipment did not meet Mr. Fox's expectations, and he deducted $15,000 from the price. Byron sued OMC in Washington for breach of contract and breach of warranty. The complaint alleged that OMC damaged the equipment while loading it for shipping. OMC was personally served in Virginia.

OMC moved pursuant to CR 12(b)(2) to dismiss the complaint for lack of jurisdiction alleging insufficient contacts to satisfy Washington's long-arm statute. The trial court agreed, granted the motion and awarded OMC attorney fees of $1,620. Byron's motion for reconsideration was denied.

## DISCUSSION

*Standard of Review:* We review questions of

personal jurisdiction de novo. *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 595, 849 P.2d 669 (1993). The plaintiff has the burden of establishing jurisdiction. *Id.*

■■ *Minimum Contacts:* Under Washington's long-arm statute, transacting business within the state establishes jurisdiction. RCW 4.28.185(1)(a). RCW 4.28.185 represents a legislative intent to assert personal jurisdiction over a foreign corporation to the full extent permitted by due process. *Deutsch v. West Coast Mach. Co.*, 80 Wn.2d 707, 711, 497 P.2d 1311, *cert. denied sub nom. Kansai Iron Works, Ltd. v. Marubeni-IIDA, Inc.*, 409 U.S. 1009 (1972). Due process is satisfied if (1) the corporation has purposefully consummated some transaction in Washington; (2) the cause of action arises from or is connected with the transaction; and (3) the assumption of jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.*; *Washington Equip. Mfg. Co. v. Concrete Placing Co.*, 85 Wn. App. 240, 246, 931 P.2d 170 (1997). This is the minimum contacts doctrine of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057 (1945).

■ There is no formula; minimum contacts must be determined in light of the particular facts of each case. *Washington Equip.*, 85 Wn. App. at 246; *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 112, 381 P.2d 245 (1963). Our focus is on the acts of the defendant, not the plaintiff. *CTVC of Haw. Co. v. Shinawatra*, 82 Wn. App. 699, 715, 919 P.2d 1243, 932 P.2d 664 (1996), *review denied*, 131 Wn.2d 1020 (1997).

■ *Purposeful Availment*: By purposefully availing itself of the privilege of conducting business in Washington, a foreign corporation acquires the benefits and protections of Washington law. *Peter Pan Seafoods, Inc. v. Mogelberg Foods, Inc.*, 14 Wn. App. 527, 529, 544 P.2d 30 (1975). Initiating contact for the purpose of establishing a business relationship is the first step in submitting to the jurisdiction of the state.

In contract disputes, purposeful availment often turns on

which party solicited the agreement and where. *Washington Equip.*, 85 Wn. App. at 246-47. The fact that a foreign corporation makes initial contact for the purpose of soliciting a business connection in Washington is significant. *Peter Pan*, 14 Wn. App. at 530. But who first contacted whom is less important than the resulting commercial connection. *Kysar v. Lambert*, 76 Wn. App. 470, 488-89, 887 P.2d 431, *review denied*, 126 Wn.2d 1019 (1995).

Both parties concede that OMC solicited Byron's brokerage services. OMC telephoned Byron from Virginia and requested Byron's services as broker of apple packing equipment. That contract expired. Byron contacted OMC in Virginia. It agreed to pay OMC in full and bill Mr. Fox by a separate agreement. Effectively, Byron bought the equipment and resold it to Mr. Fox.

The dispute over whether the Fox sale was within the original brokerage agreement may have implications for the underlying contract dispute. But it is not relevant to this jurisdictional issue. A purposeful act, not a presently enforceable contract, is all that is required. In *Crown Controls, Inc. v. Smiley*, 47 Wn. App. 832, 836, 737 P.2d 709 (1987), *aff'd*, 110 Wn.2d 695, 756 P.2d 717 (1988), the Oregon buyer did no more than telephone the Washington seller, setting in motion the disputed deal. There were several other telephone calls that resulted in the parties signing a contract and goods being shipped overseas from Washington. *Crown Controls*, 47 Wn. App. at 836. Yet the court there concluded the contacts were sufficient to impose jurisdiction.

Here, the trial court reasoned that the expired original brokerage contract could not form the basis for jurisdiction. And the only pertinent agreement was the later oral agreement extending the business relationship. The court concluded that the second contract was independent of the first. Relying on *Washington Equipment*, the court found it dispositive that Byron, not OMC, initiated the second contract.

Byron's complaint, however, alleges that the sale to Mr. Fox was arranged pursuant to an oral extension of the

brokerage contract. For the purposes of adjudicating the jurisdiction issue, we assume those allegations are true. *Harbison*, 69 Wn. App. at 595.

▆ OMC also argues that it did not know the equipment would end up in Washington. Whether the product was expected to end up in Oregon or Washington is immaterial. The act of soliciting and engaging a Washington broker is enough to establish minimum contacts for jurisdiction purposes. This is so, even if the ultimate customer is not expected to be a Washington resident. *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 684-85, 430 P.2d 600 (1967); *Crown Controls*, 47 Wn. App. 832.

OMC says it did not deliver the equipment to Washington because it was shipped FOB Virginia. Again, this may be relevant to the underlying contract dispute. But if OMC knew the goods were destined for Washington, it does not make a difference. It cannot defeat jurisdiction by the technical expedient of shipping FOB Virginia. For example, a South Carolina defendant did not escape liability for CERCLA clean-up in Florida by delivering old batteries to a South Carolina battery disposal outfit in South Carolina. The fact the defendant knew the waste would wind up in Florida was sufficient to satisfy Florida's long-arm due process. *Chatham Steel Corp. v. Brown*, 858 F. Supp. 1130, 1147-48 (N.D. Fla. 1994).

Here, OMC was selling this apple packing equipment in a major apple growing state. Byron's affidavit opposing the motion to dismiss states that OMC had direct discussions with Mr. Fox and knew the destination of the goods. Byron's complaint alleges OMC delivered direct to Mr. Fox in Washington. For this jurisdiction analysis, we treat the allegations in the complaint as established. *Lewis v. Bours*, 119 Wn.2d 667, 670, 835 P.2d 221 (1992).

OMC's conduct satisfies the purposeful availment requirement.

▆ *Cause of Action Arose From the Transaction:* Specific

jurisdiction is established under RCW 4.28.185 if the cause of action arises from or is connected to the foreign entity's purposeful conduct in Washington. *Sorb Oil Corp. v. Batalla Corp.*, 32 Wn. App. 296, 301, 647 P.2d 514 (1982). We apply a "but for" test. *CTVC*, 82 Wn. App. at 719.

OMC solicited and contracted for Byron's services. But for OMC's doing so, Byron would not be out $15,000 on the Fox sale. The dispute arises from and directly concerns this transaction.

*Fair Play and Substantial Justice*: This requires consideration of the "quality, nature and extent of the defendant's activity in the state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the parties, and the 'basic equities' of the situation." *Sorb Oil*, 32 Wn. App. at 301.

The nature of OMC's conduct in Washington was to establish an ongoing relationship with Byron for the purpose of commercial gain. It is no less convenient for OMC to appear in Washington than for Byron to sue in Virginia. Mr. Fox is a Washington resident. Further, Washington is a major apple producing state. It was therefore at least foreseeable, if not intended, that Byron would find a Washington purchaser for the apple packing equipment.

Considerations of fair play and substantial justice would not be affronted by the exercise of Washington jurisdiction over this dispute.

We reverse the order of dismissal and remand for trial on the merits.

BROWN and KATO, JJ., concur.

Review denied at 138 Wn.2d 1024 (1999).