[No. 23333-9-II.   Division Two.   June 18, 1999.]

PRECISION LABORATORY PLASTICS, INC., *Appellant*, v. MICRO TEST, INC., *Respondent*.

*Harold Kent Prukop, Jr.* of *Lucas & Lucas, P.S.*; and *Mark Barshfield Anderson* of *Davies Pearson, P.C.*, for appellant.

*Robert Nelson Meals* of *Meals & Bor P.L.L.C.*; and *Schreder Wheeler & Flint L.L.P.* (*Timothy C. Batten*, of counsel), for respondent.

HUNT, J. — Precision Laboratory Plastics, Inc., appeals dismissal of its breach of contract lawsuit against Micro Test, Inc. Holding that Micro Test transacted business in

Washington and was, therefore, subject to personal jurisdiction under the long-arm statute, we reverse.

## FACTS

### I. CONTRACT

Micro Test, Inc. (Micro Test), a Georgia corporation, manufactures a medium for transporting disease-causing organisms to medical laboratories. Precision Laboratory Plastics, Inc. (Precision Labs), a Washington corporation located in Centralia, manufactures plastic parts and supplies used by medical, research, and pharmaceutical laboratories. Micro Test uses vials, such as those produced by Precision Labs, to contain its medium for shipment.

On November 12, 1996, Micro Test ordered 10,000 10 ml vials from Precision Labs. Steve Racioppi, president of Micro Test, telephoned Precision Labs and asked if they could also produce a 15 ml vial, similar to the 10 ml vial. Precision Labs was not manufacturing 15 ml vials; rather, it would need to retool machinery and create the necessary larger mold. Nonetheless, Joseph Lasby, Precision Labs' Chief Financial Officer, faxed information to Racioppi. After a series of negotiations by telephone, Lasby prepared and faxed a written agreement to Racioppi, who requested minor changes.

After further long-distance negotiations, on February 6, 1997, the parties entered into a contract for Precision Labs to create a special mold for manufacturing 15 ml vials for Micro Test.[1] Micro Test agreed to purchase 3 million 15 ml vials over a three-year period, after which the price would be reduced. Micro Test could cancel the contract by giving 60 days notice, but it would have to reimburse Precision Labs the unamortized cost of the mold. When Precision Labs received a $3,800 down payment on the mold, it was to give Micro Test a date certain for the first shipment of vials so that Micro Test could terminate its relationship

---

[1]The estimated cost of the mold was $38,000.

with its existing supplier.[2] Micro Test ordered 10,000 10 ml vials in May 1997 and 20,000 more in October 1997. In September 1997, Precision Labs shipped Micro Test its first order of 15 ml vials.

## II. GEORGIA LAWSUIT

Micro Test contends that the 15 ml vials were defective because they leaked. On January 12, 1998, Micro Test filed an action in Georgia, claiming breach of contract based on product unfitness. Precision Labs filed a counterclaim, asserting breach of contract for failure to pay for the product.

## III. WASHINGTON LAWSUIT

On January 16, 1998, Precision Labs filed a separate action in Lewis County Superior Court, Washington, asserting in its complaint the allegations of the counterclaim it had previously filed in Georgia. On April 6, 1998, Precision Labs amended its complaint. On April 8, 1998, Micro Test filed a special appearance and a CR 12(b)(2) motion to dismiss Precision Labs' Washington action based on lack of personal jurisdiction over Micro Test.[3] Micro Test argued that it was merely a buyer of Washington-made goods and, as such, it was not doing business in Washington and not subject to Washington's long-arm statute, RCW 4.28.185.

On April 14, 1998, Micro Test filed its answer to Precision Labs' complaint, asserting five defenses: (1) lack of jurisdiction, reiterated from its CR 12(b)(2) motion; (2) insufficient service of process; (3) supersedure by the Georgia proceeding; (4) failure of a condition precedent; and (5) failure of consideration. On May 1, 1998, the Lewis County

---

[2]Micro Test needed to know the exact timing of the shipment because once Micro Test terminated its existing relationship, it would have no other supplier of 15 ml vials.

[3]Micro Test's motion was based on Civil Rule (CR) 12(b)(2), which requires a defendant affirmatively to assert lack of personal jurisdiction in a responsive pleading; otherwise this defense may be deemed waived. CR 12.

Superior Court granted Micro Test's motion to dismiss for lack of personal jurisdiction.

## ANALYSIS

### I. STANDARD OF REVIEW

██ █ A trial court's ruling on personal jurisdiction is a question of law reviewable de novo when the underlying facts are undisputed. *Lewis v. Bours,* 119 Wn.2d 667, 669, 835 P.2d 221 (1992); *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.,* 60 Wn. App. 414, 418, 804 P.2d 627 (1991). If the trial court's ruling is based on affidavits and discovery, "only a prima facie showing of jurisdiction is required." *MBM,* 60 Wn. App. at 418; *Pedersen Fisheries, Inc. v. Patti Indus., Inc.,* 563 F. Supp. 72, 74 (W.D. Wash. 1983). Here, although Precision Labs has the burden of demonstrating jurisdiction, the allegations in its complaint are considered substantiated for purposes of appeal. *See MBM Fisheries,* 60 Wn. App. at 418.

### II. PERSONAL JURISDICTION

Personal jurisdiction is bounded by due process under the Fourteenth Amendment;[4] an out-of-state defendant must have some minimum contact with the state so that personal jurisdiction will not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 161 A.L.R. 1057 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278, 132 A.L.R. 1357 (1940)).

██ General personal jurisdiction can exist when the defendant transacts "substantial and continuous business of such character as to give rise to a legal obligation." *MBM Fisheries,* 60 Wn. App. at 418. Here, we are concerned with specific jurisdiction, which arises from certain activities

---

[4]No state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1.

within the state. *MBM Fisheries*, 60 Wn. App. at 422-23. Specific personal jurisdiction over out-of-state defendants is measured by RCW 4.28.185, which reads in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
>
> (a) The transaction of any business within this state . . . .

Three factors must coalesce to satisfy RCW 4.28.185:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or *consummate some transaction in the forum state*; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. (citations omitted)

*Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963) (emphasis added); *Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 721, 504 P.2d 782 (1972); *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 767, 783 P.2d 78 (1989). RCW 4.28.185 extends personal jurisdiction over out-of-state defendants to the full limit of federal due process. *Shute*, 113 Wn.2d at 771.

1. Purposeful Transaction In Forum State

■ The first *Tyee* factor is whether the foreign corporation has transacted business in the forum state. It is irrelevant which party initiated the transaction if a business relationship arises from the transaction. *Sorb Oil Corp. v. Batalla Corp.*, 32 Wn. App. 296, 299, 647 P.2d 514 (1982); *see Kysar v. Lambert*, 76 Wn. App. 470, 487, 887 P.2d 431,

*review denied*, 126 Wn.2d 1019 (1995). But the mere presence of a contract alone cannot establish specific personal jurisdiction; rather, we view the nature of the contractual relationship and consider factors such as:

> prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing [to determine] whether the defendant purposefully established minimum contacts within the forum.

*Burger King Corp. v. Rudewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985). When parties "reach out beyond one state and create *continuing relationships* and obligations with citizens of another state, courts need not resort to a fictional 'consent' in order to sustain the jurisdiction of [the latter state's courts]." *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S. Ct. 927, 929, 94 L. Ed. 1154 (1950) (emphasis added); *Burger King Corp.*, 471 U.S. at 473.

Here, Micro Test formed a contract with Precision Labs contemplating future consequences and creating a continuing relationship with ongoing obligations. Micro Test has purposefully and continuously transacted business within Washington State. If Micro Test had merely purchased goods from Precision Labs, then its argument against specific personal jurisdiction might prevail. But Precision Labs and Micro Test negotiated an ongoing business relationship, culminating in a bilateral contract, pursuant to which Precision Labs retooled its machinery to custom manufacture 15 ml vials for Micro Test.

The contract reflects a series of negotiations facilitated by telephone and fax machine, the locus of which, therefore, is difficult to pinpoint.[5] The parties agreed that Precision Labs would create a special mold at a cost of $38,000 so that Precision Labs could custom manufacture 15 ml vials

---

[5]But the locus of negotiations culminating in a contract is not dispositive. The salient factor is that Micro Test purposefully negotiated an ongoing business relationship with a Washington corporation, a relationship that had substantive effects in Washington and created future obligations.

for Micro Test. Micro Test agreed to purchase 3 million vials over a three-year period. Even if Micro Test cancelled prematurely, it would be liable for the remaining unamortized cost of producing the mold. Viewing the totality of the business relationship between Precision Labs and Micro Test, we hold that Micro Test purposely transacted business within this state.

### 2. Cause of Action Arising From Contract

The parties agree that the cause of action arises from this transaction. Thus, the second *Tyee* factor is satisfied.

### 3. Fair Play and Substantial Justice

■ The third and final *Tyee* factor is whether the Washington court's assertion of personal jurisdiction over Micro Test offends traditional notions of fair play and substantial justice. We look to the nature, quality, and extent of Micro Test's activity in this state, the convenience of the parties, the benefits and protections of Washington law, "and the basic equities of the situation." *Tyee Constr. Co.*, 62 Wn.2d at 115-16.

Micro Test's activities in Washington consisted of negotiating a long term business relationship with Precision Labs, convincing Precision Labs to build a special mold and custom manufacture a different size vial, and purchasing these and other vials from Precision Labs. Long distance negotiation of a contract should not defeat jurisdiction in this electronic era where myriad contracts are consummated daily by telecommunication.[6] It is immaterial

---

[6]Although business is transacted using modern devices, as was done here, established notions of due process and fair play, as expressed by Constitutional due process requirements, work well to determine whether an individual has established minimum contacts with a state sufficient for the state to exercise jurisdiction.

Even in today's business environment, where companies can negotiate contracts and conduct business from the office desktop, established standards for determining personal jurisdiction can and do accommodate "new" personal jurisdiction questions. In analyzing personal jurisdiction over the internet, courts look to whether the web site was passive or active, and to what extent the parties purposefully conducted business in any given jurisdiction. Eric H. Findlay, *Litigation on the Net: Personal Jurisdiction in Cyberspace*, 62 Tex. B.J. 334 (1999). A federal district court noted that a passive web site, one that merely makes infor-

that: (1) Micro Test has no office in Washington; (2) no Micro Test agent ever entered this state; and (3) each party remained in its home state and negotiated the contract via telephone and facsimile machine.

The critical factors here are that: (1) Micro Test's activities created an ongoing business relationship encompassing continuing obligations with Precision Labs, a Washington resident; and (2) beyond merely purchasing Precision Labs' existing inventory, Micro Test solicited Precision Labs to custom produce a new product for Micro Test alone. That this relationship began to deteriorate immediately, when Micro Test claimed that the custom vials were defective, is of little consequence. Considering prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing, Micro Test did more than merely enter into a contract with a Washington resident. *Burger King*, 471 U.S. at 479.

The parties' convenience does not weigh for or against assumption of jurisdiction. Although Precision Labs asserts that its expert witnesses are located in Washington, both parties are inconvenienced if one is required to travel to the other's home state. The machine that produced the allegedly defective goods is located in Washington, but the goods are in Georgia. Expert witnesses could testify at either location, with varying travel costs.

We cannot say that Micro Test will be unduly inconvenienced by being haled into Washington's courts anymore than Precision Labs has been inconvenienced by responding in the Georgia courts. By virtue of its ongoing business

mation available, does not support jurisdiction; but when web sites invite an exchange of information, courts can examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). In that case, the district court looked to the extent and nature of the cyber contacts and found jurisdiction proper using the established analytical framework; minimum contacts, cause of action arising from the transaction, and traditional notions of fair play and substantial justice. *Id.* at 1124. Likewise, in *CompuServe, Inc. v. Patterson*, the Sixth Circuit used traditional jurisdiction analysis where the transaction in question occurred wholly over the internet and was "almost entirely electronic in nature." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-68 (6th Cir. 1996).

relationship with Precision Labs, Micro Test enjoys the protection and benefits of Washington's laws governing corporations and sales. Further, "[t]he protection of legal rights of Washington residents is a legitimate state interest." *Sorb Oil Corp.*, 32 Wn. App. at 301. Considering the totality of Micro Test's activity within the state and the other *Tyee* factors, the Washington court's assertion of specific jurisdiction over Micro Test does not offend traditional notions of fair play and substantive justice.

Division One found the following contacts sufficient: (1) Mogelberg, a New York based corporation, telephoned Peter Pan Seafoods, a Washington-based corporation, and inquired about purchasing seafood; (2) that telephone call resulted in a business relationship between the two corporations that resulted in substantial sales from Peter Pan to Mogelberg and lasted approximately one year. *Peter Pan Seafoods v. Mogelberg Foods*, 14 Wn. App. 527, 528-29, 544 P.2d 30 (1975). On facts very similar to those present here, Division One again found sufficient minimum contacts when the out-of-state defendant had telephoned a Washington corporation to ask about purchasing gas chlorination equipment, there were several further telephone negotiations, and the parties entered a contract concerning the equipment. *Crown Controls, Inc., v. Smiley*, 47 Wn. App. 832, 834-37, 737 P.2d 709 (1987), *aff'd*, 110 Wn.2d 695 (1988).

Citing *Peter Pan*, we reached a similar conclusion in *Kysar*, 76 Wn. App. at 487-89. In *Kysar*, a Massachusetts company ordered Christmas trees from a Washington company in 1987, 1988, and then again for the 1989 Christmas season. *Kysar*, 76 Wn. App. at 473. Although the parties' agreement contained a choice of forum clause, we found that RCW 4.28.185 provided a second, independent basis for asserting personal jurisdiction because: (1) the parties had an ongoing business relationship lasting several seasons; (2) on the back of the form order was a choice of forum clause; and (3) the "transaction at issue here involved an exchange of forms, letters and phone calls be-

tween Washington and Massachusetts." *Kysar,* 76 Wn. App. at 489-90.

Like Mogelberg and the defendant in *Crown Controls,* Micro Test initiated the transaction by first contacting Precision Labs. From this initial contact an ongoing business relationship ensued, resulting in continued sales and obligations. And, like the suits in *Peter Pan, Kysar,* and *Crown Controls,* this suit was instituted in Washington to recover amounts owed a Washington corporation stemming from an ongoing business relationship with an out-of-state corporation. Thus, we hold that minimum contacts are established here by the parties' business relationship, and that Washington courts have personal jurisdiction over Micro Test.

We reverse the trial court's dismissal of Precision Labs' action.

BRIDGEWATER, C.J., and ARMSTRONG, J., concur.