[No. 25248-1-II. Division Two. January 12, 2001.]

RICHARD RAYMOND, *Appellant*, v. JACK ROBINSON, ET AL., *Respondents*.

628

630

*Thomas J. West* and *Mellani R. Hughes* (of *Krilich, La Porte, West & Lockner, P.S.*), for appellant.

*Timothy R. Gosselin* (of *Burgess Fitzer, P.S.*), for respondents.

SEINFELD, J. — Richard Raymond, a Washington resident, appeals the trial court's dismissal for lack of personal jurisdiction of his suit against Jack and Susan Robinson, doing business as R.V. Interiors (RVI). Finding jurisdiction under the long-arm statute, RCW 4.28.185, we reverse.

## FACTS

The underlying facts of this case are not in dispute. RVI is an Arizona business that installs recreational vehicle accessories. RVI does not have any offices or agents in Washington State.

RVI advertises in four national magazines that reach this

state. Between 1994 and 1999, RVI sold approximately 96 slide-out units, 9 to Washington residents.[1] During this same period, approximately 150 Washington residents contacted RVI, although not all of these contacts resulted in a sale. It is unclear from the record exactly how many of these sales or contacts resulted from RVI's advertisements.

All the slide-out units that RVI sold in Washington were manufactured in Arizona, and RVI performs all of its installations and most of its repairs and adjustments in Arizona. But occasionally RVI authorizes warranty repair work in the customer's home state.

Raymond, a Washington resident, contacted RVI after seeing one of its advertisements in a national magazine. After receiving brochures and a list of previous Washington customers from RVI and discussing terms by telephone and by letter, Raymond purchased a slide-out unit from RVI. Raymond drove his recreational vehicle (RV) to Arizona where RVI installed the slide-out. The slide-out came with a one-year limited warranty, which required the performance of all warranty work in Arizona.

Shortly after RVI installed the slide-out, Raymond began to experience problems with it. Raymond took his RV to Arizona for repairs once. Later, RVI authorized additional repairs and adjustments in Washington and South Dakota and sent a technician from Arizona to Washington to address the problems. RVI also orally agreed to extend Raymond's warranty. Later RVI determined that the slide-out was operating properly and refused to pay for any further repairs or adjustments.

Raymond sued RVI, alleging breach of written or oral agreements; negligent or unworkmanlike manufacture, installation, and repair; breach of express or implied warranty; and violations of the Washington Consumer Protection Act. RVI moved to dismiss for lack of personal jurisdiction. The trial court granted RVI's motion.

---

[1] A "slide-out" unit is a recreational vehicle accessory that expands the space of the recreational vehicle.

## I. Standard of Review and Burden of Proof

When the underlying facts are undisputed, we review a trial court's dismissal order for lack of personal jurisdiction de novo. *Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992); *Precision Lab. Plastics, Inc. v. Micro Test, Inc.*, 96 Wn. App. 721, 725, 981 P.2d 454 (1999); *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991). The plaintiff bears the burden of making a prima facie showing of jurisdiction. *Precision Lab.*, 96 Wn. App. at 725; *MBM Fisheries*, 60 Wn. App. at 418. On appeal, we consider the allegations in the plaintiff's complaint as true. *Precision Lab.*, 96 Wn. App. at 725; *MBM Fisheries*, 60 Wn. App. at 418.

## II. General Jurisdiction

General jurisdiction over a nonresident defendant is proper when the defendant's actions in the state are so substantial and continuous that justice allows the exercise of jurisdiction even for claims not arising from the defendant's contacts within the state. *Precision Lab.*, 96 Wn. App. at 725; *Im Ex Trading Co. v. Raad*, 92 Wn. App. 529, 534-35, 963 P.2d 952 (1998). RCW 4.28.080(10) authorizes general jurisdiction over a nonresident defendant if the defendant is transacting substantial and continuous business within the state of such character as to give rise to a legal obligation. *Crose v. Volkswagenwerk Aktiengesellschaft*, 88 Wn.2d 50, 54, 558 P.2d 764 (1977); *Hartley v. Am. Contract Bridge League*, 61 Wn. App. 600, 605, 812 P.2d 109 (1991); *MBM Fisheries*, 60 Wn. App. at 418; *Hein v. Taco Bell, Inc.*, 60 Wn. App. 325, 330, 803 P.2d 329 (1991).

RVI's contacts with Washington consist of the following: (1) placing advertisements in four national magazines that reach Washington consumers; (2) sending brochures and informational materials or otherwise contacting approximately 150 Washington consumers, at least in part due to its national advertising; (3) negotiating terms with Wash-

ington consumers via phone and mail; (4) selling approximately 10 percent of its slide-out units to Washington consumers during a five-year period, at least in part due to its national advertising; (5) assembling a list of past customers residing in Washington and distributing this list to potential customers in Washington; (6) authorizing warranty repairs within Washington; (7) sending a technician to Washington to service Raymond's slide-out unit; and (8) orally extending Raymond's warranty while Raymond was in Washington.

Raymond asserts that these contacts are sufficient to establish that RVI has conducted substantial and continuous activities within this state, citing *Hein* and *Hartley*. In *Hein*, the court held that the defendant's contacts with Washington were sufficient to justify the exercise of general jurisdiction over the defendant, Taco Bell. Taco Bell's contacts consisted of: (1) registering as a foreign corporation in Washington for 24 years, (2) operating 16 restaurants in the Seattle area and others throughout the state, (3) employing numerous Washington residents, and (4) purchasing supplies and selling goods within the state. The court also recognized that Taco Bell benefited from various state and local services, such as fire and police protection. *Hein*, 60 Wn. App. at 330-31.

Similarly, in *Hartley*, the court held that the defendant's contacts with Washington were sufficient to justify the exercise of general jurisdiction because the defendant, a bridge league: (1) published a magazine for its members, including several Washington residents; (2) collected fees from Washington residents for competitions held in Washington; (3) collected dues from members, including several Washington residents; (4) arranged bridge tournaments in Washington; (5) transported supplies and goods to these tournaments; (6) determined which Washington residents could participate in the tournaments; and (7) sold bridge-oriented goods to Washington residents. 61 Wn. App. at 606.

RVI distinguishes its activities from those in *Hartley* and *Hein*. It asserts that unlike the defendant in *Hartley*, it does

not direct its advertising to particular Washington residents; it responds to inquiries from potential customers but does not participate in nor organize any events in Washington; it does not directly initiate contact with potential customers; and it does not buy, sell, or distribute products within the state. RVI also argues that, unlike the defendant in *Hein*, it is not a registered foreign corporation in Washington, it has no employees in the state, nor has it benefited from government services such as police and fire protection.

RVI argues that its activities in Washington are more similar to those of the defendant in *MBM Fisheries*. In *MBM Fisheries*, the court held that the defendant's activities did not justify the exercise of general jurisdiction because the defendant's activities were isolated and minimal. 60 Wn. App. at 420. The defendant's contacts or activities were limited to: (1) performing repair work in Louisiana on four vessels owned by Washington residents, including the plaintiff's, none of whom contacted the defendant because of its national advertising; (2) brokering the purchase of a barge located in Louisiana by a Louisiana client through a Washington broker; and (3) sending its vice-president and another employee to a trade show in Seattle. *MBM Fisheries*, 60 Wn. App. at 417-18. Although the defendant had placed advertisements in four trade magazines, the court emphasized that none of the advertisements generated any business from Washington residents. *MBM Fisheries*, 60 Wn. App. at 420.

RVI asserts that *MBM Fisheries* controls because it establishes that merely advertising in a forum state is an insufficient basis for establishing general jurisdiction. But the *MBM Fisheries* court simply recognized that the advertisements *alone* were insufficient to establish general jurisdiction, particularly because the advertisements did not generate any of the defendant's Washington business.

The cases that RVI and Raymond cite provide examples of situations where there clearly was or was not jurisdiction. The facts here fall between those two extremes: RVI had more contacts with Washington than the defendant in

*MBM Fisheries*, but the cases that Raymond cites contain facts significantly more compelling than those here.

The facts of *Banton v. Opryland U.S.A., Inc.*, 53 Wn. App. 409, 767 P.2d 584, *overruled on other grounds by Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 783 P.2d 78 (1989), appear more similar to those in this case. In *Banton*, the plaintiff injured himself while visiting the Grand Ole Opry House. *Banton*, 53 Wn. App. at 410. The plaintiff had visited Opryland in response to a promotional event he attended in Washington. *Banton*, 53 Wn. App. at 410.

In *Banton*, the defendant made a sales presentation in Washington, paid commissions to travel brokers in Washington, occasionally broadcast music in this state, and received a resident's check and returned a confirmation of reservation for tickets and lodging in Washington. *Banton*, 53 Wn. App. at 417-18. The *Banton* court determined that these contacts did not constitute substantial or frequent contact that would justify the exercise of general jurisdiction. 53 Wn. App. at 415, 418.

■ RVI's contacts with Raymond resulted in the sale of a product that ended up in Washington and a continuing obligation to honor its warranty for at least one year. This level of contact in Washington is no greater than that of the defendant's in *Banton*. Thus, we conclude that the trial court did not err when it determined that the exercise of general jurisdiction was inappropriate.

## III. Specific Jurisdiction

In the alternative, Raymond argues that specific jurisdiction exists under Washington's long-arm statute, RCW 4.28.185, because RVI transacted business within the state and committed a tortious act within the state.

RCW 4.28.185, provides in part:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action

arising from the doing of any of said acts:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state[.]

Raymond alleges jurisdiction under both RCW 4.28-.185(1)(a) and (1)(b).

■ To determine whether specific jurisdiction exists under the transaction of business portion of the long-arm statute, RCW 4.28.185(1)(a), Raymond must establish three factors: (1) RVI must have purposefully done some act or consummated some transaction in this state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 767, 783 P.2d 78 (1989); *Precision Lab.*, 96 Wn. App. at 726; *MBM Fisheries*, 60 Wn. App. at 423.

A. Purposeful Act

■ To establish the requisite minimal contacts that the first factor addresses, there must be evidence that RVI purposefully did some act or consummated some transaction in this state. Raymond must show that RVI purposefully availed itself of the privilege of conducting activities within the state, invoking the benefits and protections of our laws. *CTVC of Haw. Co. v. Shinawatra*, 82 Wn. App. 699, 710, 919 P.2d 1243, 932 P.2d 664 (1996); *Walker v. Bonney-Watson Co.*, 64 Wn. App. 27, 34, 823 P.2d 518 (1992). The focus of this inquiry is on the quality and nature of RVI's activities in the state, rather than the number of acts within the state or some other mechanical standard. *CTVC of Haw. Co.*, 82 Wn. App. at 710. But RVI's activity level need not reach the level required to establish general jurisdiction.

■ To determine whether RVI had sufficient minimal contact within the state, we examine the entire transaction, including negotiations; contemplated future consequences; the terms of the contract; and the parties' actual course of dealing. *Precision Lab.*, 96 Wn. App. at 727; *MBM Fisheries*, 60 Wn. App. at 423.

The courts have exercised jurisdiction where the defendant has purposefully availed itself of the state's markets and derived a financial benefit from this market. *See Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 757 P.2d 933 (1988); *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 975 P.2d 555, *review denied*, 138 Wn.2d 1024 (1999). But the mere execution of a contract with a state resident alone is not sufficient to fulfill the "purposeful act" requirement. *Precision Lab.*, 96 Wn. App. at 727; *MBM Fisheries*, 60 Wn. App. at 423. Additionally, although the party who initiated the initial contact has relevance, it is not determinative. *Byron Nelson Co.*, 95 Wn. App. at 466.

RVI again analogizes to *MBM Fisheries*. But as discussed above, unlike the defendant's advertisements in *MBM Fisheries*, RVI's advertisements resulted in multiple contacts and completed transactions with Washington residents. In *MBM Fisheries*, the defendant had not solicited any of its Washington business; here, however, RVI initiated the transactions through its advertisements and actively encouraged the sales by sending brochures and reference lists to its potential Washington customers.

Moreover, RVI's course of dealing with Raymond significantly increased RVI's intentional contacts within this state. Despite RVI's warranty requirement that all warranty work be performed in Arizona, RVI chose to waive this requirement and allow Raymond to have his slide-out repaired in this state.

This is substantially more activity and contact than the four unsolicited contacts present in *MBM Fisheries*. While this difference was insufficient to establish general jurisdiction, the level of activity or contact needed to establish specific jurisdiction is less substantial. RVI clearly received an economic gain from advertising in this state, and it created an ongoing relationship with Raymond by issuing a one-year limited warranty and by intentionally allowing Raymond to execute this warranty within this state.

Raymond relies on *Byron Nelson Co.*, which found specific jurisdiction under much less compelling circumstances than are present here. There, the Court of Appeals found specific jurisdiction, thereby allowing a Washington equipment broker to sue a Virginia equipment seller for breach of contract and breach of warranty. The Washington buyer had refused to reimburse the broker for the full price of equipment that was damaged when the equipment seller incorrectly packaged it.

The court held that the seller purposefully availed itself of the privilege of conducting business in Washington by (1) initiating contact with the Washington equipment broker to establish a business relationship, (2) arranging for an oral extension of an expired contract with the broker, and (3) delivering equipment to a Washington buyer. Although the court recognized that who initiated the contact is not a decisive consideration, it can be an important factor. *Byron Nelson Co.*, 95 Wn. App. at 465-66.

In an effort to distinguish *Byron Nelson Co.*, RVI argues that unlike the seller in that case, it never contemplated an ongoing business relationship. But, this argument ignores the fact that RVI's initial contact, through its advertisements, led to a business relationship that resulted in an economic benefit; that RVI, by selling its products to Washington residents, knew that its products would end up in this state; and that RVI's relationship with the purchaser extended at least as long as the warranty RVI issued with its product. This relationship was further strengthened when RVI allowed Raymond to execute his warranty within this state.

*Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 849 P.2d 669 (1993), a case that neither party discusses, contains more similar facts. There, the court found that the defendant was subject to specific jurisdiction because it had purposefully attended a sports trade show and solicited Washington clients (including the plaintiff) at the show, deriving economic benefit from these contacts. *Harbison*, 69 Wn. App. at 600. The defendant also followed

up its initial contact by sending promotional material and reservation confirmations into this state. *Harbison*, 69 Wn. App. at 600.

As in *Harbison*, RVI actively solicited business in this state, sent follow-up promotional materials to this state, and derived economic benefit from its contacts in this state. RVI engaged in affirmative conduct within this state by advertising and it intended that this activity would result in economic benefit. These facts are sufficient to establish RVI's purposeful acts within the State; this is not a situation of a mere random, fortuitous, or attenuated contact, or a unilateral act of another party. *See Chandler v. Roy*, 985 F. Supp. 1205, 1211-12 (D. Ariz. 1997). Further, RVI's affirmative conduct of approving repairs within this state significantly increased its contacts with Washington. Thus, we conclude that Raymond has established this first factor.

B. Arising From

This court applies the "but for" test to determine whether a claim against a nonresident business arises from, or is connected with, its solicitation of business within the state. *Byron Nelson Co.*, 95 Wn. App. at 468; *CTVC of Haw. Co.*, 82 Wn. App. at 719. This factor is established if the events giving rise to the claim would not have occurred "but for" the business's solicitation within this state. *CTVC of Haw. Co.*, 82 Wn. App. at 719. The "but for" test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum. *Chandler*, 985 F. Supp. at 1212. Again, it is the plaintiff's burden to establish this element. *CTVC of Haw. Co.*, 82 Wn. App. at 719-20.

Raymond asserts that the "but for" test is met because "but for" RVI's advertising in this state, he would not have purchased RVI's product and RVI would not have installed the product and refused to honor the warranty. Raymond again relies on *Byron Nelson Co.*

RVI contends that the alleged harm was from faulty manufacture or installation, rather than the advertisements, and that those acts occurred out of state. RVI also

argues that *MBM Fisheries* established that advertisements in the forum state are insufficient to support jurisdiction.

Assuming that the defects in the slide-out unit originated in Arizona, this does not negate the possibility that Raymond's claim would not have occurred but for RVI's business activities in Washington State. The pleadings suggest that RVI's in-state advertisements and distribution of lists of Washington customers led Raymond to purchase the slide-out unit and that the work of RVI's technician in Washington contributed to Raymond's claim.

Further, the *MBM Fisheries* court did not hold that advertisements in the forum state were irrelevant to jurisdictional determinations. It merely recognized that under the facts before it, the defendant's advertisements could not alone establish specific jurisdiction because, unlike here, the advertisements had not generated any business from Washington and were unrelated to the defendant's Washington contacts. *MBM Fisheries*, 60 Wn. App. at 424.

■ In *Byron Nelson Co.*, the court found the "but for" test satisfied because the defendant solicited the plaintiff's services and "but for" that solicitation, the plaintiff would not be out $15,000 on the sale of the damaged equipment. 95 Wn. App. at 468. The same circumstances exist here: "but for" RVI's advertisement in this state and the subsequent contacts between Raymond and RVI, Raymond would not have purchased RVI's product and would not have been harmed. Raymond has established this factor.

C. Traditional Notions of Fair Play and Substantial Justice

■ Finally, the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice in light of the quality, nature, and extent of the defendant's activity in the state; the relative convenience of the parties; the benefits and protection of the laws afforded the respective parties; and the basic equities of the situation. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106,

115-16, 381 P.2d 245 (1963); *Precision Lab.*, 96 Wn. App. at 728.[2]

Raymond argues that RVI purposefully availed itself of the Washington market for its own economic benefit, it advertised in this market, a full 10 percent of its sales came from this market, and it maintained its connection with this market by servicing his slide-out in this state and extending his warranty.

RVI asserts that the exercise of jurisdiction is inappropriate because it did not specifically target the Washington market, it placed only a small number of advertisements in international magazines, it did not contemplate an ongoing business relationship with Raymond or any other customer in this state, its subsequent contacts with Raymond were at his request and for his benefit rather than RVI's benefit and, above all, it did not contemplate being haled into court in Washington State.

Although RVI may not have contemplated being haled into court in this state, it knew it was soliciting business from this state and sending its product into this state; it knew it had continuing warranty obligations for at least a year; and it knew that it had approved warranty work within this state. Further, its agreement to allow Raymond to service his RV here shows RVI's knowledge of its continuing obligation to Raymond.

Additionally, the subject matter of Raymond's claims, the RV with the RVI slide-out, is located in this state as are several of the service centers that conducted warranty work on the RV. This enhances the desirability of Washington as the forum state.

RVI actively solicited business in this state, knew its products would be brought into this state, and agreed to allow service within this state. When we consider these

---

[2] In discussing this factor, Raymond incorrectly refers to the minimum contacts analysis contained in *Smith v. York Food Machinery Co.*, 81 Wn.2d 719, 504 P.2d 782 (1972). There, the court determined that if it found sufficient minimum contacts this factor was established. However, in *Grange Insurance*, the Supreme Court held that this analysis was more properly applied when determining the purposeful act factor. 110 Wn.2d at 759-60.

factors, along with RVI's agreement to allow servicing of the unit in Washington, we conclude that jurisdiction in this state does not offend traditional notions of fair play and substantial justice. Consequently, we conclude the long-arm statute applies, specific jurisdiction exists under RCW 4.28.185(1)(a), and the trial court erred when it dismissed Raymond's claims for lack of specific personal jurisdiction.[3]

Accordingly, we affirm the superior court's ruling as to general jurisdiction, reverse the superior court's ruling as to special jurisdiction, and remand this case to the superior court for further proceedings.

ARMSTRONG, C.J., and WOOD, J. Pro Tem., concur.

---

[3] RVI argues that even if Raymond can establish jurisdiction under RCW 4.28.185 or RCW 4.28.080(10), Raymond must also establish that the five due process requirements laid out in *Crose* have been met. RVI asserts that although Division One has held that the *Crose* factors have been subsumed by the three-factor long-arm statute analysis, Division Two still requires that these factors be met.

Washington courts have held repeatedly that the current general jurisdiction analysis subsumes the due process requirements. *See Harbison*, 69 Wn. App. at 595-96; *Hartley*, 61 Wn. App. at 605; *Hein*, 60 Wn. App. at 328-30. Additionally, although *Hartley*, the Division Two case RVI cites, appears to require the application of the *Crose* five-factor due process analysis when evaluating whether specific jurisdiction exists, *Hartley*, 61 Wn. App. at 607 n.4, a review of more current cases reveals that Division Two has held that the three-factor long-arm analysis comports with due process and has applied the three-factor analysis without reference to the *Crose* factors. *See Precision Lab.*, 96 Wn. App. at 726 (applying the three-factor long-arm analysis without discussion of *Crose* factors); *Kysar v. Lambert*, 76 Wn. App. 470, 487-88, 887 P.2d 431 (1995) (stating that federal due process permits the exercise of jurisdiction when factors similar to those of the three-factor long-arm analysis are met). *See also Shute*, 113 Wn.2d at 771.