[No. 32558-6-II.    Division Two.    January 24, 2006.]

JENELLE BARTUSCH, *Respondent*, v. THE OREGON STATE BOARD OF HIGHER EDUCATION ET AL., *Petitioners*.

300

*Phillip M. Bender* (of *Preston Gates & Ellis, L.L.P.*), for petitioners.

*G. Paul Mabrey*, for respondent.

¶1 VAN DEREN, A.C.J. — The Oregon State Board of Higher Education, Oregon State University Corvallis, Oregon State University College of Veterinary Medicine, and the Oregon State University College of Veterinary Medicine's Veterinary Teaching Hospital appeal the trial court's denial of their motion to dismiss Jenelle Bartusch's claims arising from injuries she alleges her horse sustained while in their care in Oregon. They argue that the Washington trial court erred in ruling that Washington has general and long-arm jurisdiction. We hold that Washington does not have jurisdiction and, thus, we reverse and dismiss.

## FACTS

### I. SUBSTANTIVE FACTS

¶2 Washington veterinarian Dr. Linda Hagerman initially treated Bartusch's horse, Jet, for a leg injury it sustained in 2000. Hagerman could not completely heal Jet so, at Bartusch's request, she referred Bartusch to the

Veterinary Teaching Hospital (Hospital) at Oregon State University in Corvallis, Oregon.

¶3 In July 2001, Bartusch sent Jet to the Hospital for treatment of a leg wound.[1] The Hospital successfully performed surgery on the leg but noticed that Jet showed signs of colic. On July 5, the Hospital diagnosed Jet with cecal impaction.[2] The next day, the Hospital performed a rectal examination to which Bartusch consented. Subsequently, the Hospital diagnosed Jet with a rectal wall tear that required aggressive treatment and surgery.

¶4 Bartusch asserts that Jet, for which she paid $25,000 in 1999, decreased in value to approximately $5,000 after the Hospital's treatment. In addition, the Hospital charged Bartusch $10,032.65 for the treatment.

II. PROCEDURAL FACTS

¶5 On March 23, 2004, Bartusch filed multiple claims against the Hospital in Pierce County Superior Court,[3] alleging that the Hospital negligently caused the rectal tear. Specifically, she raised claims for breach of bailment, breach of contract, and veterinary negligence.

¶6 The Hospital moved to dismiss for lack of jurisdiction. Bartusch responded that the Hospital conducted sufficient business within the state of Washington to establish jurisdiction. She cited the Washington, Oregon, and Idaho (WOI) Cooperative Veterinary Education Program[4] as evidence of the Hospital's business presence in the Washing-

---

[1] Bartusch did not take Jet to the hospital but, rather, a friend transported the horse.

[2] Impactions of the cecum or large colon. THE MERCK VETERINARY MANUAL (Susan E. Aiello ed., 8th ed. 1998), *abailable at* http://www.merckvetmanual.com/mvm/index.jsp?cfile=htm/bc/21704.htm.

[3] Bartusch did not bring her claims in Oregon for two reasons. First, she argues that she would suffer financial hardship if she were forced to litigate in Oregon. And second, the Oregon statute of limitations barred her suit.

[4] In 1974, Washington State University (WSU) and the University of Idaho developed a cooperative veterinary medical education program. Oregon State University (OSU) joined the program in 1979. The agreement provides that OSU students spend 15 months of their training at WSU and the remaining

ton. Bartusch argued that the WOI program encourages students to refer patients to the Hospital in Oregon because Washington students become familiar with the Hospital through their curriculum. And since the Hospital relies heavily on referrals from Washington, she argued that the referral system constitutes a business presence in Washington.

¶7 The court denied the Hospital's motion to dismiss, ruling that Washington had general jurisdiction under RCW 4.28.080(10) and long-arm jurisdiction under RCW 4-.28.185(1)(a). It found that the Hospital conducted substantial and continuous business in Washington, stating, "Defendant's business contacts with Washington veterinarians and horse owners are conducted pursuant to its proprietary or business function, as opposed to its governmental functions." Clerk's Papers at 129.

¶8 We granted discretionary review under RAP 2.3(b)(1) and (2).

## ANALYSIS

### I. STANDARD OF REVIEW

■■ ¶9 When the underlying facts are undisputed, we review de novo a trial court's order on a motion for dismissal for lack of jurisdiction. *Raymond v. Robinson*, 104 Wn. App. 627, 633, 15 P.3d 697 (2001). The burden of proof rests with the party attempting to assert jurisdiction. *MBM Fisheries v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991).

### II. JURISDICTION

A. General Jurisdiction
■■ ¶10 Under RCW 4.28.080(10), Washington courts may exert general jurisdiction over a nonresident defen-

time at OSU. The program offers teaching facilities in all three states. It is referred to as WOI.

dant when "the defendant's actions in the state are so substantial and continuous that justice allows the exercise of jurisdiction even for claims not arising from the defendant's contacts within the state." *Raymond*, 104 Wn. App. at 633. The primary focus in determining if a Washington court can assert general jurisdiction over a nonresident defendant is whether the defendant is conducting substantial and continuous business in the state. *MBM Fisheries*, 60 Wn. App. at 420. This analysis requires us to look to the amount, kind, and continuity of activities carried out by the nonresident in Washington. *MBM Fisheries*, 60 Wn. App. at 420.

¶11 The Hospital argues that the trial court's assertion of general jurisdiction is erroneous because it is not a corporation, joint stock company, or association doing business in Washington. It argues that it is an educational institution, a part of the Oregon University system, which is an entity within Oregon State's executive branch. In support of its argument, the Hospital points to several Oregon statutes: Oregon Revised Statutes (ORS) § 351.060 (authority of the Board of Higher Education); ORS § 352.002 (Oregon State University (OSU) is under the jurisdiction of the Board of Higher Education.); and ORS § 352.230 (The Board of Education is authorized to enter into WOI agreements.).

¶12 Bartusch argues that under *Dorsch v. City of Tacoma*, governmental agencies can be considered business entities when they operate as a proprietorship ("A government acts in a proprietary capacity when it engages in a business-like venture as opposed to acting in a governmental capacity."). 92 Wn. App. 131, 135, 960 P.2d 489 (1998).

¶13 But *Dorsch* is inapposite here. In *Dorsch*, the court looked at whether the public duty doctrine barred the family of a man fatally electrocuted on city power lines from suing the city. 92 Wn. App. at 133. The court examined both legislative intent and the city's proprietary functions to determine whether the city was immune from liability.

Although the court stated that a governmental body can act in a proprietary manner when providing medical or psychiatric care, *Dorsch*, 92 Wn. App. at 135, the court focused on the notion of proprietary function in the highly limited area of discretionary immunity. *See, e.g.*, *Petersen v. State*, 100 Wn.2d 421, 434, 671 P.2d 230 (1983) ("[T]he scope of discretionary immunity 'should be no greater than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions.' " (quoting *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 445, 551 P.2d 334, 131 Cal. Rptr. 14 (1976))). *Dorsch* did not address whether the city's actions constituted business activity in a forum state sufficient to grant the state general jurisdiction.

¶14 Here, the evidence shows that the Hospital receives referrals from veterinarians in Washington, has a website to assist the referring veterinarians, and bills people from Washington for treatment rendered in Oregon. But the evidence also shows that the Hospital (1) teaches students in Oregon State as part of the OSU system, (2) has no offices in Washington, (3) does not treat animals in Washington, (4) has no employees in Washington, (5) introduces no products into the stream of commerce in Washington, and (6) does not make direct contact with prospective clients in Washington.

¶15 These facts do not constitute substantial and continuous business activity of a proprietary nature in Washington. Thus, Bartusch has not established that the Hospital is a business or corporation or that its activities as a governmental agency in Washington are sufficient to meet the stringent requirements of general jurisdiction.[5] *See, e.g.*, *Raymond*, 104 Wn. App. at 638.

B. Long-Arm Jurisdiction

¶16 Bartusch argues that even if Washington cannot exert general jurisdiction over the Hospital, the trial court

---

[5] Although the Hospital was a participant in the WOI program, the record is devoid of any evidence of the Hospital's presence in Washington outside of its students taking classes at WSU for a limited period of time.

properly concluded that it had long-arm jurisdiction because the Hospital conducted business in Washington by soliciting referrals from Washington veterinarians.[6]

■ ¶17 RCW 4.28.185(1)(a) grants Washington courts long-arm jurisdiction over out of state parties when:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
>
> (a) The transaction of any business within this state . . . .

Long-arm jurisdiction standards are less stringent than those necessary to establish general jurisdiction. *Raymond*, 104 Wn. App. at 638.

■ ¶18 To evaluate whether long-arm jurisdiction exists, we examine three factors: (1) whether the party purposefully committed some act or consummated some transaction in the state; (2) whether the cause of action arose from, or was connected with, the act or transaction; and (3) whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Raymond*, 104 Wn. App. at 637. The focus is on the quality and nature of the act occurring within the forum state. *Raymond*, 104 Wn. App. at 637.

■ ¶19 We evaluate the entire business transaction, including the negotiations, the contemplated future consequences, the terms, and the parties' course of dealing to

---

[6] Bartusch does not contend that the Hospital committed a tortious act in Washington, thereby subjecting itself to Washington jurisdiction. But if she did offer this argument, it would fail due to the holding in *Lewis v. Bours*, which stated:

> In the event that a nonresident professional commits malpractice in another state against a Washington State resident, that, standing alone, does not constitute a tortious act committed in this state regardless of whether the Washington State resident suffered injury upon his or her return to Washington.

119 Wn.2d 667, 673, 835 P.2d 221 (1992).

determine whether the purposeful act requirement is met. *Raymond*, 104 Wn. App. at 637. The mere execution of a contract with a state resident is not enough to fulfill the purposeful act requirement. *Raymond*, 104 Wn. App. at 638. And while the court may look at which party initiated the contract, such a fact is merely relevant and not determinative. *Raymond*, 104 Wn. App. at 638.

¶20 Here, in order for Washington to exert long-arm jurisdiction over the Hospital, the evidence must show that the Hospital "availed itself of the privilege of conducting activities within the state, invoking the benefits and protections of our laws." *Raymond*, 104 Wn. App. at 637. And it must have "purposefully availed itself of the state's markets and derived a financial benefit." *Raymond*, 104 Wn. App. at 638.

¶21 In *Raymond*, we concluded that long-arm jurisdiction existed because the defendant (1) initiated business transactions through advertising and (2) encouraged sales by sending brochures and reference lists to potential Washington customers. 104 Wn. App. at 637-40. We also noted that the parties' course of dealing placed the defendant in Washington because it agreed to perform warranty work in the state. *Raymond*, 104 Wn. App. at 638.

¶22 In *MBM Fisheries*, Division One of this court held that the defendant did not act purposefully within Washington and thereby the plaintiff failed to establish the minimum requirements necessary for the state to exercise long-arm jurisdiction because the defendant (1) did not have offices in Washington; (2) did not conduct business in Washington; (3) advertised in only four trade publications, one of which might have been sold in Washington; and (4) had done business with only four other Washington residents. 60 Wn. App. at 417, 424. Furthermore, the plaintiff took his boat to the defendant's state for repairs and the parties negotiated the contract in the defendant's state via a Seattle telecopier. *MBM Fisheries*, 60 Wn. App. at 417.

¶23 Finally, in *Grange Insurance Ass'n v. State*, our Supreme Court emphasized the distinction between volun-

tary interstate economic activity directed at the forum state's economic markets and medical services provided outside the forum state where the treatment provider did not solicit clientele. 110 Wn.2d 752, 763-64, 757 P.2d 933 (1988). The court reasoned that physicians would be less likely to offer treatment to out-of-state patients if they had to defend malpractice suits in other states. *Grange*, 110 Wn.2d at 763. And it distinguished the selling of goods in a forum state from the more personal nature of rendering services, finding that the location where the services are performed carries more jurisdictional importance. *Grange*, 110 Wn.2d at 763. This same reasoning applies here.

¶24 The Hospital's purposeful actions in Washington are more akin to those of the defendant in *MBM Fisheries*. Furthermore, the concerns voiced in *Grange* regarding the availability of veterinarian services if Washington were to exert long-arm jurisdiction over the Hospital under the present circumstances, are valid here. The Hospital does not have offices or employees in Washington and it does not provide services in Washington. In addition, Bartusch sought the Hospital's services because friends told her that she should have her Washington veterinarian refer her to the Hospital, not because her Washington veterinarian advised her to send Jet there, nor in response to the Hospital's solicitation. And Jet received all medical services at the Hospital in Oregon.

¶25 The evidence does not demonstrate that the Hospital had a sufficient presence or level of activity in Washington to confer long-arm jurisdiction based on its providing Jet medical care in Oregon. The Hospital received their referral from Dr. Hagerman, a Washington veterinarian, but Bartusch did not provide any evidence of the number of Washington referrals or Washington patients the Hospital treats, or how they access the Hospital. Bartusch alleges that the Hospital uses a referral system in Washington, but she offers only the referral guide and the Hospital's website address as evidence, both of which are directed to referring veterinarians. She fails to explain how the referral guide or

website[7] are used in Washington, merely asserting that they evidence the importance of the referral system to the Hospital.

¶26 Bartusch also fails to present any evidence that the Hospital advertised in Washington, sent brochures or solicitations directly to potential clients, in any other way availed itself of the benefit or protection of our laws, or financially benefited from our market. *See, e.g., Raymond*, 104 Wn. App. at 637-38. And as *Grange* stresses, when considering whether to subject a medical services provider to the jurisdiction of the patient's home state, there is an important distinction between economic activity focusing on the forum state's economic markets and medical services rendered outside the forum state that do not involve direct patient solicitation. 110 Wn.2d at 763. Jet's treatment took place solely in Oregon, a significant jurisdictional factor. *Grange*, 110 Wn.2d at 763. And if the Hospital is forced to defend claims where a veterinary patient resides, it may become increasingly reluctant to treat out-of-state animals. *See, e.g., Grange*, 110 Wn.2d at 763.

¶27 Under these circumstances, we hold that the Hospital had only a minimal presence in the state, insufficient for Washington to exert long-arm jurisdiction.

### III. CONCLUSION

¶28 The Hospital does not conduct continuous and substantial business in Washington. Nor does it purposefully conduct business in Washington by accepting referrals from Washington veterinarians based on a referral guide, a website, or through knowledge Washington veterinarians

---

[7] The issue of whether a website is sufficient evidence of continuous and substantial contacts to justify long-arm jurisdiction has been discussed in *Precision Laboratory Plastics, Inc. v. Micro Test, Inc.*, 96 Wn. App. 721, 728 n.6, 981 P.2d 454 (1999). There, the court noted a distinction between an active and a passive site. Here, the Hospital's site is passive, i.e., it provides information, but does not solicit business or referrals. It contains the kind of information formerly available in printed forms or via telephone inquiry to the Hospital. *Precision Lab.*, 96 Wn. App. at 728 n.6 (A passive website that merely makes information available is not enough to support jurisdiction.).

gain through the WOI educational program.[8] Thus, the trial court erred when it exerted jurisdiction over the Hospital under RCW 4.28.080(10), the general jurisdiction statute, and under RCW 4.28.185(1)(a), the long-arm statute.

¶29 We reverse and direct dismissal of Bartusch's claims against the Hospital.[9]

HUNT and PENOYAR, JJ., concur.

Reconsideration denied April 3, 2006.

---

[8] Because the Hospital did not violate the first prong of the three-part test for jurisdiction, the remaining two factors are irrelevant. *Grange*, 110 Wn.2d at 765.

[9] Because Washington does not have jurisdiction over the Hospital, we do not address the parties' additional arguments.